UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MGI DIGITAL TECHNOLOGY S.A., <br>   Plaintiff, <br><br> v. <br><br> DUPLO U.S.A. CORPORATION, <br>   Defendant. | **Case No. SA CV 22-00979-DOC-KES** <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER TO ADD DEFENSE OF INEQUITABLE CONDUCT [151]** |

# INTRODUCTION

Before the Court is Defendant Duplo U.S.A Corporation's Motion for Leave to Amend Answer to Add Defense of Inequitable Conduct ("Motion") (Dkt. 151) and memorandum in support (Dkt. 154 (sealed); Dkt. 149-1 (redacted)) ("Mem"). Also before the Court are Plaintiff MGI Digital Technology S.A.'s opposition (Dkt. 158-1 (sealed); Dkt. 159 (redacted)) ("Opp'n") and Defendant's reply (Dkt. 173 (sealed); Dkt. 164 (redacted)) ("Reply"). The Court heard oral arguments on October 16, 2023. For reasons set forth below, the Court **DENIES** Defendant's Motion.

## I. BACKGROUND

Defendant argues that Plaintiff withheld important documents regarding a prior art printhead manufactured by Konica Minolta, the "KM512" printhead, until near the close of fact discovery when Plaintiff's President, named inventor Edmond Abergel, testified during deposition on August 3, 2023, that Plaintiff used information from Konica Minolta regarding the KM512 during Plaintiff's design and development of the claimed inventions. Mem. at 1. Defendant argues that "[t]he Konica Minolta information discloses both structural aspects of a printhead which are claimed in the patent, as well as other specific claimed features such as a 'waveform.'" *Id.* at 3.

Plaintiff responds that "MGI produced the materials concerning the KM512 printhead not as prior art (and MGI maintains such documents are not prior art), and not in response to any motion about prior art, but rather pursuant to the Special Master's order SM-11 indicating that MGI should produce further information about the functionality of its *commercial embodiments*." Opp'n at 2–3. Plaintiff argues that Defendant's proposed amendment would be futile because "[i]t simply cannot be said that the proposed amended answer plausibly alleges that Mr. Abergel knew of withheld material information and withheld such information with a specific intent to deceive." *Id.* at 1. Plaintiff argues that a more reasonable inference to be drawn from the evidence is that "the KM512 documents were cumulative and simply not material to the issue of patentability." *Id.* at 2.

Defendant replies that its motion "is squarely necessitated by MGI's late production of non-cumulative, potentially case-dispositive prior art from MGI's files on the eve of the discovery deadline." Reply at 1. In the hearing on October 16, 2023 ("Oct. 16 Hearing"), Defendant stressed that, in response to Plaintiffs' November 2022 production, Defendant served discovery requests regarding Plaintiff's development of the claimed invention but Plaintiff did not produce any KM512 documents until only a few days before the deposition of Mr. Abergel.

## II.  LEGAL STANDARD

When a party seeks to amend a pleading after the pretrial scheduling order's deadline for amending the pleadings has passed, the liberal standard of Federal Rule of Civil Procedure 15 no longer applies. *Academy of Country Music v. ACM Records, Inc.*, No. 13-CV-02448-DPP, 2014 WL 2586859, at *2 (C.D. Cal. June 10, 2014) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992)). "Once the district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which establishe[s] a timetable for amending pleadings[,] that rule's standards control[]." *Johnson*, 975 F.2d at 607–08. Therefore, to amend a pleading after a court issues its scheduling order, the party must first demonstrate good cause to modify the scheduling order under Rule 16(b) and then show amendment is warranted under Rule 15(a). *Id.* at 608. Rule 15(a) focuses on bad faith, whereas the Rule 16(b) "good cause" standard focuses on diligence. *Id.*

### A. Rule 16(b)(4)

The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* (quoting Fed. R. Civ. P. 16 Advisory Committee's Notes (1983 amendment)).

"Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* (citations omitted). Further, even though "prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification . . . If that party was not diligent, the inquiry should end." *Id.* (citations omitted).

"Good cause" can also be established through a showing of "extraordinary circumstances," which is "not intended to be a less rigorous standard than good cause." *Id.* Several district courts have laid out factors to consider whether the moving party has established good cause, including showing:

> (1) that [he or she] was diligent in assisting the court in creating a workable Rule 16 order; (2) that [his or her] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [his or her] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [he or she] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [he or she] could not comply with the order.

*Academy of Country Music*, 2014 WL 2586859, at *2 (quoting *Hood v. Hartford Life & Acc. Ins. Co.*, 567 F. Supp. 2d 1221, 1224 (E.D. Cal. 2008)).

### B. Rule 15(a)(2)

Rule 15(a)(2) places leave to amend "within the sound discretion of the trial court. In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979–80 (9th Cir. 1981). "Accordingly, Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *Id.*

"[T]he Supreme Court identified four factors relevant to whether a motion for leave to amend pleadings should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party." *Id.* However, "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend. 'Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading.' . . . 'The mere fact that an amendment is offered late in the case is . . . not enough to bar it.'" *Id.* (citations omitted).

### III. DISCUSSION

#### A. Rule 16(b)(4)

The deadline to amend pleadings was January 3, 2023. *See* Dkt. 48, Nov. 3, 2022 Scheduling Order at 2.

Defendant filed the present motion for leave to amend on September 5, 2023, a full eight months after the Court's deadline for amending pleadings.

The Court first considers whether Defendant's motion satisfies the factors under Rule 16(b) for modifying the pretrial schedule. Defendant's diligence in assisting the Court with preparing a Rule 16 scheduling order is not in question.

The parties dispute whether the facts giving rise to Defendant's desire to allege inequitable conduct could not have been reasonably foreseen at the time of the Rule 16 scheduling conference and whether Defendant was diligent in its investigation and in bringing the present motion.

Defendant argues that the KM512 printhead art was not known to Defendant at the time of the Rule 16 scheduling conference and that Defendant could not have alleged inequitable conduct on that basis at that time, particularly in light of Rule 9(b) requiring such allegations to be plead with particularly. Defendant submits that, in the days and weeks after deposing Mr. Abergel, Defendant notified Plaintiff of Defendant's intent to assert inequitable conduct, amended its interrogatory responses so as to include inequitable conduct on August 18, 2023, met and conferred with Plaintiff regarding this motion on August 22, 2023, and filed the present motion about two weeks later on September 5, 2023.

Plaintiff responds that Plaintiff included information regarding its commercial products in Plaintiff's production in November 2022, but Duplo did not pursue any purported issues with MGI's disclosures with the Special Master until August 2, 2023 (some eight months after MGI produced the documents concerning its product functionality). Opp'n at 3. Also, to the extent Defendant attempts to justify its delay by citing testimony of inventor Edmond Abergel, Plaintiff argues that Defendant's delay in deposing Mr. Abergel until two weeks before the close of fact discovery demonstrates a lack of diligence. *Id.* at 15.

Defendant replies that Plaintiff produced prior art documents regarding the KM512 printhead on the last two days of fact discovery (August 17–18, 2023), and that "MGI takes no accountability for its late production, unreasonable interpretation of the meaning of 'prior art,' and resulting prejudice to Duplo USA." Reply at 1. Defendant argues that the testimony of

Edmond Abergel demonstrates that Plaintiff derived the claimed inventions from the KM512 printhead (and associated documents) and purposefully withheld this information during patent prosecution. *Id.* at 1–2. Defendant urges:

> It was not until Mr. Abergel's testimony (on August 2-3[, 2023]) explaining his use of th[e KM512] documents—together with the revelation of the existence of more documents, Duplo USA's request for the same, and MGI's subsequent production of the hundreds of pages of confidential Konica Minolta documents *after* Edmond Abergel's deposition—that the materiality of these documents to the validity of the asserted patents came to light.

Reply at 2. Further, Defendant argues that "Duplo USA reasonably waited to depose the inventor, Edmond Abergel, until later in fact discovery, given MGI's rolling document productions and late disclosures." *Id.* at 7.

As a threshold matter, Defendant notes that the Special Master is permitting Defendant to amend its invalidity contentions so as to include the KM512 documents that are the basis for Defendant's motion for leave to allege inequitable conduct, *see* Reply at 1, 11 & 18, but the Special Master's finding in this regarding is of minimal (if any) relevance to the present motion because invalidity and inequitable conduct are fundamentally different inquiries.

Defendant's reliance on *XR Communications* is unavailing. In that case, the Court found that the defendants were "reasonably diligent in pursuing discovery" under Rule 16(b) when they "proceeded in an orderly fashion by seeking discovery from Plaintiff before seeking discovery from non-party witnesses." *XR Commc'ns, LLC v. D-Link Sys., Inc.*, No. SA CV 17-00596-DOC-JDE, 2022 WL 17369136, at *7 (C.D. Cal. Sept. 2, 2022). In the present case, Defendant's allegations of inequitable conduct as to purported lack of disclosure regarding KM512 are not based on any non-party discovery.

Instead, the present case is more analogous to *KlausTech*, in which the Northern District of California found lack of diligence by a party that sought to amend its infringement contentions based on information obtained during depositions about one month before the close of fact discovery:

> It was incumbent on [Plaintiff] KlausTech to act with reasonable diligence to crystallize its theories of infringement early on, and to confirm that its understanding of [Defendant's] AdMob's functionality was accurate. While KlausTech may have had strategic reasons to wait until late in

discovery to depose a 30(b)(6) witness regarding the accused product, embarking on such a strategy was fraught with risk, especially under the rubric of the Patent Local Rules. * * *

Courts consistently have refused to find diligence where a party delayed in taking key depositions.

*KlausTech, Inc. v. Google, Inc.*, No. 10-cv-05899-JSW (DMR), 2017 WL 4808558, at *5 (N.D. Cal. Oct. 25, 2017) (citations omitted).

Defendant argues that *KlausTech* is distinguishable because, in that case, the opposing party "did not actively try to hide the ball nor did it take affirmative steps to prevent KlausTech from understanding how AdMob works." *Id.* Defendant argues that, in the present case, Plaintiff "intentionally thwarted Defendant's prior art investigation by proclaiming no such documents existed." Reply at 6 n.1.

Defendant deposed Edmond Abergel on August 3–4, 2023, about two weeks before the close of fact discovery on August 18, 2023. *See* June 29, 2023 Order (Dkt. 115). As Defendant noted at the Oct. 16 Hearing, Defendant noticed Mr. Abergel for deposition in March 2023, but this deposition did not occur until after the July 21, 2023 discovery hearing in which the Special Master resolved a dispute regarding the location of the deposition. SM-9, (Dkt. 120-1). Although this issue of deposition location did cause delay, the issue was not raised with the Special Master until July 2023, less than two months before the close of fact discovery on August 18, 2023. Much like in *KlausTech*, Defendant waiting until near the close of fact discovery to depose named inventor Edmond Abergel (who is also President of Plaintiff) weighs against finding diligence.

Finally, Defendant identifies no testimony by Edmond Abergel that purportedly constitutes a sudden revelation of inequitable conduct. On one hand, Mr. Abergel testified regarding how Plaintiff used confidential information from Konica Minolta regarding KM512 during development of the claimed inventions. Mem., Ex. A, Aug. 3, 2023 E. Abergel dep. at 188:17–191:16, 194:12–25 & 197:2–199:20. On the other hand, Mr. Abergel also testified that Plaintiff developed a controller card, software, and electrical waveforms for use with Konica Minolta printheads and that the KM512 printhead was merely a component that Plaintiff utilized in Plaintiff's new systems. *See id.*; *see also* Opp'n, Ex. A, Aug. 3, 2023 E. Abergel

dep. at 173:24–174:12, 175:5–12, 192:22–193:6, 193:22–194:4, 198:7–199:20 & 258:22–259:7.

Thus, Defendant does not show "good cause" under Rule 16(b)(4) for permitting its proposed amendment to add a defense eight months after the Court's deadline for amending pleadings and only four months before trial.

**B.  Rule 15(a)(2)**

(1) Undue Delay

Defendant's delay is addressed above in the context of applying Rule 16(b). For the same reasons, Defendant's delay weighs against permitting amendment under Rule 15(a)(2).

(2) Bad Faith or Dilatory Motive

Plaintiff does not persuasively demonstrate any bad faith or dilatory motive by Defendant.

(3) Futility of Amendment

The Ninth Circuit has stated that "[a] motion for leave to amend may be denied if it appears to be futile or legally insufficient" and that "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton*, 845 F.2d 209 (9th Cir. 1988). This resembles the standard for evaluating a motion to dismiss for failure to state a claim, and in that regard the Supreme Court of the United States has found (in the analogous context of evaluating the sufficiency of a claim for relief) that "facial plausibility" is required such that there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the present case, analogously, the facts that Defendant seeks to allege in an amended Answer must be sufficient for the Court to draw a "reasonable inference" that Plaintiff has committed inequitable conduct. *Id.*; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (allegations that are "merely consistent with" the pleader's theory but equally support other inferences are

insufficient, and "without some further factual enhancement it stops short of the line between possibility and plausibility").

The parties dispute, for example, whether the KM512 printhead and associated documents are material prior art, whether Defendant can allege a viable claim of "derivation," and whether Defendant's proposed amendment adequately pleads specific intent. For example, Defendant argues that "the late-produced Konica Minolta documents teach a wealth of information about waveforms strikingly similar to what the patents claim," and "Duplo USA has sufficiently pled why the withheld KM512 prior art is not cumulative, including because it discloses a heater in the nozzle." Reply at 9, 10.

Because Defendant's proposed amendment does not adequately plead specific intent (as discussed herein), the Court need not resolve the parties' disputes regarding materiality and derivation. Particularly given that those other issues are addressed in Defendant's amended invalidity contentions, those issues can be addressed through motions for summary judgment and/or trial.

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). Inequitable conduct requires proof that the patentee "misrepresented or omitted material information with the specific intent to deceive the PTO." *Id.*

"[A]lthough 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328–29 (Fed. Cir. 2009). "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329 n.5. Further, although "[p]leading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely

within another party's control," it is permissible "only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Id.* at 1330.

*Therasense* rejected any so-called "sliding scale" in which a court could "h[o]ld patents unenforceable based on a reduced showing of intent if the record contained a strong showing of materiality, and vice versa." 649 F.3d at 1288. Non-disclosure of material prior art is insufficient to support a finding of inequitable conduct; the patentee must have acted with specific intent to deceive. *Id.* at 1290. "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Id.* Nonetheless, "the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence," and "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense*, 649 F.3d at 1290–91 (citations and internal quotation marks omitted). Defendant's argument that "intent could be inferred from the high materiality of the Konica Minolta information" is therefore unavailing. Mem. at 17.

Defendant argues that *Therasense* does not set forth a pleading standard, and Defendant cites the Court distinguishing the *Pixion* case when granting a motion for leave to amend to add a defense of inequitable conduct in *XR Communications*. In that case, however, the Court distinguished *Pixion* on its facts as to the particular non-disclosures that were at issue in *Pixion*. *XR Commc'ns*, 2022 WL 17369136, at *9. As did the court in *Pixion*, this Court explicitly noted in *XR Communications* that "the Court takes into account the ultimate burden of proving inequitable conduct under *Therasense* . . . ." *Id.*; *see Pixion, Inc. v. Citrix Sys., Inc.*, No. C 09-03496 SI, 2012 WL 762005, at *9 (N.D. Cal. Mar. 8, 2012) ("The Court raises *Therasense* because it informs the Court's decision not to grant leave to amend, as amendment of these claims would be futile.")

This Court has previously found that "[a]t the pleading stage, [the patent challenger] is not required to allege facts supporting the conclusion that specific intent to deceive is the single most reasonable inference to be drawn from the factual allegations." *Pensmore Reinforcement Techs., LLC v. Cornerstone Mfg. & Distrib., Inc.*, 609 F. Supp. 3d 1092, 1104 (C.D. Cal. 2022).

1  Here, for purposes of resolving the present motion, the Court does not require Defendant's
2  proposed allegations to pass "the single-most-reasonable-inference test." *Id.*
3  　　　　As a final threshold matter, Defendant alleges "litigation misconduct" as further support
4  for an inference of intent to deceive. Defendant points to certain disputed "whispers" during
5  the deposition of Mr. Benoit Baneat and a purported failure by Plaintiff to produce certain
6  French patent prosecution documents. Defendant also argues that Edmond Abergel did not
7  adequately search his files for documents related to development of the alleged inventions.
8  Reply at 15 (citing Ex. AA, Aug. 2, 2023 E. Abergel dep. at 58:8-11 ("Q. Did you perform a
9  search for any documents that evidence your contribution to the invention? A. No, I never
10 thought that – or thought in any way that that was necessary.").) Neither the Court nor the
11 Special Master have found any litigation misconduct by Plaintiff. Indeed, after the parties
12 submitted their briefing on this motion, the Special Master denied Defendant's motion to
13 compel French prosecution documents and also expressly found no misconduct as to the above-
14 mentioned "whispers." *See* SM-17 (Dkt. 174-1). In any event, Defendant's allegations of
15 litigation misconduct simply do not support Defendant's assertion of inequitable conduct as to
16 the prosecution of the patents. The *Regeneron* case cited by Defendant is unpersuasive.
17 *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343 (Fed. Cir. 2017). In that case, the
18 Federal Circuit found that the district court did not abuse its discretion "by drawing an adverse
19 inference of specific intent to deceive the PTO" based on "repeated violations of the district
20 court's discovery orders and improper secreting of relevant and non-privileged documents." *Id.*
21 at 1347. No such circumstance is apparent in the present case.
22 　　　　Turning to the main dispute, Defendant argues that its proposed amendments "include
23 intent to deceive demonstrated by Mr. Abergel's selective withholding of Konica Minolta-
24 related prior art—such as failing to specifically disclose Konica Minolta printheads—despite
25 disclosing other printhead manufacturer prior art." Reply at 11 (citations omitted).
26 　　　　Defendant argues that "during prosecution the Applicant disclosed other printhead
27 manufacturer prior art, but specifically did not disclose Konica Minolta prior art, even though
28 it was the very information used in the development of the claimed inventions." Mem. at 17

(citing Ex. W, Information Disclosure Statement (MGI_000255)). Defendant highlighted this point at the Oct. 16 Hearing, describing Mr. Abergel's testimony as being that KM512 was a foundational platform upon which he created the claimed invention.

Mr. Edmond Abergel testified that Plaintiff used confidential information from Konica Minolta regarding KM512 during development of the claimed inventions. Mem., Ex. C, Aug. 3, 2023 E. Abergel dep. at 188:17–191:16, 194:12–25 & 197:2–199:20. Mr. Abergel also testified, however, that Plaintiff developed a controller card, software, and electrical waveforms for use with Konica Minolta printheads and that the KM512 printhead was merely a component that Plaintiff utilized in Plaintiff's new printers. *See id.*; *see also* Opp'n, Ex. A, Aug. 3, 2023 E. Abergel dep. at 173:24–174:12, 175:5–12, 192:22–193:6, 193:22–194:4, 198:7–199:20 & 258:22–259:7. The testimony cited by Defendant does not support any "reasonable inference" of any specific intent to deceive the PTO. *Exergen*, 575 F.3d at 1328–29 & n.5.

Defendant also argues that intent to deceive is apparent from Plaintiff's arguments during prosecution regarding the "Asano" reference cited by the patent examiner (U.S. Patent No. 7,226,141). Defendant submits that, whereas Plaintiff argued Asano was distinguishable because Asano did *not* disclose a heater included in a nozzle, Plaintiff withheld KM512 documents that *did* disclose a heater included in a nozzle. Mem. at 18 (citing Ex. W, Amendment Under 37 C.F.R. § 1.114 at 9–13 (MGI_000450–454) & Ex. D, Quick Start Guide for KM512 Series Head at MGI_011771 & MGI_011778). Defendant's argument, however, bears upon materiality, and Defendant has not shown that a specific intent to deceive can be inferred from non-disclosure alone. *See Therasense*, 649 F.3d at 1288. Alternatively and in addition, Plaintiff cites prosecution history showing that the patent examiner had been made aware of a heater element. Opp'n at 11.

Defendant further argues that Edmond Abergel's inventorship oath (declaring "I believe I am the original inventor") "was false because his invention covered in substantial part the Konica Minolta[] products that were already in the market at the time." Mem. at 18–19 (quoting Ex. Y, MGI_001298). Defendant submits no authority for this argument. Rather, this appears to be an ordinary invalidity argument reframed as an allegation of perjury, whereby Defendant

would appear to require that no inventor can work from old elements. The Supreme Court of the United States has explained otherwise. *See, e.g.*, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418–19 (2007) ("[I]nventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.") Defendant's argument thus does not support any inference of specific intent to deceive.

Finally, Defendant argues that Plaintiff was "under pressure to obtain patents," thus purportedly providing a motive to device the PTO, Mem. at 17 (discussing Ex. X at 9 (MGI_011196)), but if a motivation to obtain patents were supportive of finding an intent to deceive, then such a finding could potentially be made in almost every patent case because all technology companies are motivated to obtain patents.

In sum, Defendant's allegations of a purported "pattern of deception," Mem., Ex. A, at 10, 16, are insufficient under *Iqbal* and *Therasense* to support an assertion of inequitable conduct. The likely futility of Defendant's proposed allegations of inequitable conduct weighs against permitting Defendant's proposed amendment.

### (4) Prejudice to the Opposing Party

Defendant argues that "[t]here is no prejudice to MGI having to defend against an inequitable conduct defense arising from information known to its inventor, but that was otherwise withheld from Defendant throughout the entirety of fact discovery," and "MGI cannot credibly claim prejudice for Konica Minolta prior art that it has known about for years." (Mem. at 14.) Defendant further argues that "MGI has been in possession of the KM512 documents long before this litigation even began, including during proceedings commencing in 2017 in France, where the asserted patents extended from the same French priority applications relied upon by MGI here." Reply at 18. Defendant urges that "MGI created the current situation in which it delayed producing damaging and potentially case-dispositive discovery until the very end of discovery (which Duplo USA believes is litigation misconduct), and MGI cannot now complain of prejudice from timing issues." *Id.* at 18–19.

Trial is set for February 6, 2024. *See* Dkt. 48 at 1.

"Prejudice is the touchstone of the inquiry under rule 15(a)," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citations and internal quotation marks omitted).

On one hand, as the parties both noted in the Oct. 16 Hearing, inequitable conduct is an issue for the Court, not the jury. *See, e.g., Gen. Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405 (Fed. Cir. 1994) ("[T]he disputed issues of fact underlying the issue of inequitable conduct are not jury questions, the issue being entirely equitable in nature."). Permitting Defendant to add an inequitable conduct defense therefore would not complicate Plaintiff's presentation of its case at the upcoming jury trial, at least not directly.

On the other hand, Defendant's proposed amendment would result in dubious and time-consuming additional discovery that would cause Plaintiff to incur costs in responding to additional discovery requests, expert opinions, deposition notices, and motion practice as well as a likely delay in the resolution of Plaintiff's claims for relief. The Federal Circuit has squarely recognized these concerns, commenting in *Therasense* that assertions of inequitable conduct were "cluttering up the patent system," were "overused to the detriment of the public," and were causing system-wide harm including "increased adjudication cost and complexity, reduced likelihood of settlement, [and] burdened courts." 649 F.3d at 1289–90.

On balance, the likely prejudice to Plaintiff weighs against Defendant's proposed amendment.

### (5) Balancing of Rule 15(a)(2) Factors

The factor of bad faith or dilatory motive is neutral. The factors of undue delay, futility of amendment, and prejudice to the opposing party weigh against permitting amendment. Defendant's motion for leave to amend under Rule 15(a)(2) should therefore be denied.

## IV. DISPOSITION

Defendant fails to meet the Rule 16(b)(4) "good cause" standard for modifying the Court's schedule. This is a sufficient basis to deny Defendant's motion. Also, even if Rule 16(b)(4) were deemed to be satisfied, Defendant nonetheless also fails to meet the Rule 15(a)(2) standard for amending its pleading.

Defendant Duplo U.S.A Corporation's Motion for Leave to Amend Answer to Add Defense of Inequitable Conduct (Dkt. 151) is DENIED.

DATED: October 17, 2023

DAVID O. CARTER

UNITED STATES DISTRICT JUDGE