John T. Johnson (CA 281609)
jjohnson@fr.com
Christopher S. Marchese (CA 170239)
marchese@fr.com
Tyler R. Train (CA 318998)
train@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Telephone: (213) 533-4240
Facsimile: (858) 678-5099

*Additional counsel listed on signature page*

Attorneys for Defendant
DUPLO U.S.A. CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MGI DIGITAL TECHNOLOGY S.A.,<br><br>Plaintiff,<br><br>v.<br><br>DUPLO U.S.A. CORPORATION,<br><br>Defendants. | Case No. 8:22-cv-00979-DOC-KES<br><br>**DEFENDANT DUPLO U.S.A. CORPORATION'S NOTICE OF MOTION AND MOTIONS *IN LIMINE* NOS. 1 THROUGH 13**<br><br>Date:   January 22, 2024<br>Time:   8:30 a.m.<br>Dept:   10A<br>Judge: Hon. David O. Carter<br><br>Magistrate Judge: Hon Karen E. Scott<br>Special Master: David E. Keyzer |

TO PLAINTIFF AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on January 22, 2024 at 8:30 a.m., or as soon thereafter may be heard in the United States District Court, Central District of California, located at the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa, Ana, CA 92701, Courtroom 10A, before the Honorable David O. Carter, Defendant Duplo U.S.A. Corporation ("Duplo USA") will move, and hereby does present for hearing by this Court these Motions *in Limine* Nos. 1-13.

This motion is made pursuant to the Court's Scheduling Order (Dkt. 48), as well as Local Rules applicable thereto.  This motion is based on this notice of motion, the accompanying memorandum in support filed concurrently herewith, the declaration of John T. Johnson filed in support, the accompanying exhibits, the pleadings on file in this action, and on such other written or oral argument or evidence as may be presented at or before the time this motion is taken under submission.

This Notice of Motion and Motions *in Limine* Nos. 1 through 13 is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 8, 2024.

Dated:  January 12, 2024

FISH & RICHARDSON P.C.

By: */s/ John T. Johnson*

John T. Johnson

Attorneys for Defendant DUPLO U.S.A. CORPORATION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................1

II.    LEGAL STANDARD .........................................................................1

III.   MIL NO. 1: MGI'S LITIGATION IN FRANCE AGAINST THIRD PARTIES ...............................................................................1

IV.   MIL NO. 2: PTAB AND INTER PARTES REVIEW ....................................7

V.    MIL NO. 3: ABSENCE AT TRIAL OF ANY DUPLO USA PRE-LITIGATION OUTSIDE COUNSEL ....................................................10

VI.   MIL NO. 4: MGI'S INFRINGEMENT ACCUSATIONS AGAINST THIRD PARTIES AND 2017 ACCUSATIONS AGAINST DUPLO USA ........................................................................11

VII.  MIL NO. 5: INFRINGEMENT OR VALIDITY FROM ANY MGI EMPLOYEE OR FORMER MGI OR MGI USA EMPLOYEE ......................................................................................13

VIII. MIL NO. 6: MGI'S PURPORTED COMMUNICATIONS WITH NON-PARTY DUPLO ENTITIES AND DUPLO USA'S CORPORATE RELATIONSHIP WITH THOSE ENTITIES ....................14

IX.   MIL NO. 7: FUNDING OF THE LITIGATION .........................................16

X.    MIL NO. 8: PEJORATIVE STATEMENTS LIKE COPIED, STOLE, MISAPPROPRIATED, OR PIRATED MGI'S PRODUCT ......................................................................................17

XI.   MIL NO. 9: COURT OR SPECIAL MASTER RULINGS, OTHER THAN ACTUAL ADOPTED CLAIM CONSTRUCTIONS ..........................................................................18

XII.  MIL NO. 10: PRETRIAL PROCEEDINGS, DISCOVERY DISPUTES, MOTION PRACTICE, OR ALLEGATIONS OF DENIED DISCOVERY .........................................................................19

XIII. MIL NO. 11: MGI'S PRODUCTS PRACTICING ASSERTED PATENTS ..............................................................................22

XIV. MIL NO. 12: KONICA MINOLTA SALES ACTIVITIES .........................24

XV.  MIL NO. 13: COMPARISONS OF BURDEN OF PROOF STANDARDS ......................................................................................25

XVI. CONCLUSION ................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3Com Corp. v. Realtek Semiconductor Corp.*,
2008 WL 783383 (N.D. Cal. Mar. 24, 2008) ...................................................3, 7

*640 Octavia, LLC v. Heinz-Pieper*,
843 F. App'x 924 (9th Cir. 2021)....................................................................21

*Asyst Techs., Inc. v. Empak, Inc.*,
2007 WL 120845 (N.D. Cal. Jan. 11, 2007).....................................................18

*Atmel Corp. v. Info. Storage Devices, Inc.*,
189 F.R.D. 410 (N.D. Cal. 1999) ....................................................................22

*AVM Techs., LLC v. Intel Corp.*,
2017 WL 1787562 (D. Del. May 1, 2017) ........................................................16

*Barnett v. Gamboa*,
2013 WL 174077 (E.D. Cal. Jan. 16, 2013) ....................................................20

*Bio-Rad Labs., Inc. v. 10x Genomics, Inc.*,
2018 WL 6629705 (D. Del. Oct. 12, 2018).........................................................8

*Brown v. Carr*,
2008 WL 167313 (S.D. Tex. Jan. 16, 2008).....................................................21

*Chamberlain Grp. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019) ..................................................................9, 10

*Colibri Heart Valve LLC v. Medtronic CoreValve LLC*,
No. 8:20-cv-00847-DOC-JDE, Dkt. 369 (C.D. Cal. Aug. 17, 2022)
(Carter, J.) .........................................................................................16, 18, 19

*Cordance Corp. v. Amazon.com, Inc.*,
631 F. Supp. 2d 477 (D. Del. 2009) ...........................................................14, 22

*Edwards Lifesciences LLC v. Medtronic CoreValve LLC*,
2014 WL 12927825 (D. Del. Jan. 2, 2014) ........................................................3

*Enova Tech. Corp. v. Initio Corp.*,
2013 WL 12156023 (D. Del. Jan 31., 2013) ...................................................3, 6

*Eolas Tech., Inc. v. Microsoft Corp.*,
  270 F. Supp. 2d 997 (N.D. Ill. 2003)..................................................................18

*Evolved Wireless, LLC v. Apple, Inc.*,
  2019 WL 1100471 (D. Del. Mar. 7, 2019) ............................................................8

*Finjan, Inc. v. Sophos, Inc.*,
  2016 WL 4560071 (N.D. Cal. Aug. 22, 2016) ......................................................8

*Gonzales v. Valenzuela*,
  2002 WL 34700599 (C.D. Cal. Oct. 7, 2002) ......................................................19

*Grace v. Apple Inc.*,
  2020 WL 227404 (N.D. Cal. Jan. 15, 2020)......................................................1, 2

*Guajome Park Acad., Inc. v. Duperry*,
  2008 WL 11337592 (S.D. Cal. Mar. 12, 2008)...................................................12

*Habersham Plantation Corp. v. Molyneux*,
  2011 WL 13216995 (S.D. Fla. Dec. 5, 2011).....................................................12

*Illumina, Inc. v. BGI Genomics Co., Ltd*,
  2021 WL 4979799 (N.D. Cal. Oct. 27, 2021) ......................................................3

*Innovationpool GmbH v. Google Inc.*,
  2016 WL 11531119 (D. Del. May 16, 2016) ........................................................9

*Intell. Ventures II LLC v. FedEx Corp.*,
  2018 WL 10638138 (E.D. Tex. Apr. 26, 2018) ..................................................20

*Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*,
  392 F.3d 1317 (Fed. Cir. 2004) ...................................................................17, 23

*Luce v. United States*,
  469 U.S. 38 (1984)................................................................................................1

*Masimo Corp. v. Apple Inc.*,
  2023 WL 3432126 (C.D. Cal. Mar. 15, 2023) (Selna, J.) ...................................1

*Medlock v. Taco Bell Corp.*,
  2016 WL 430438 (E.D. Cal. Feb. 4, 2016) .........................................................1

*Mformation v. RIM*,
  2012 WL 1142537 (N.D. Cal. Mar. 29, 2012) ..................................................19

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
Case No. 14-cv-03657-SI, slip op. (N.D. Cal. Jul. 18, 2019)................................8

*Nichia Corp. v. Vizio, Inc.*,
2019 WL 1966665 (C.D. Cal. Mar. 25, 2019) (Otero, J.) .................................8, 9

*Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.*,
2009 WL 3754170 (D.N.J. Nov. 5, 2009) ............................................................1

*Ohio House LLC v. City of Costa Mesa*,
2022 WL 2189541 (C.D. Cal. Mar. 28, 2022) (Selna, J.) ................................1, 5

*Patent Harbor, LLC v. Audiovox Corp.*,
No. 6:10-cv-361-LED-JDL, Dkt. 538 (E.D. Tex. Sept. 27, 2012)......................16

*Personalized Media Commc'ns, LLC v. Zynga, Inc.*,
No. 2:12-cv-68, Dkt. 232 (E.D. Tex. Nov. 8, 2013) ..........................................10

*Pinn, Inc. v. Apple Inc.*,
2021 WL 4777134 (C.D. Cal. July 14, 2021) (Carter, J.) ............................16, 25

*Pinn, Inc. v. Apple Inc.*,
No. 8:19-cv-01805-DOC-JDE, Dkt. 425-1 (C.D. Cal. Apr. 9, 2021) ................25

*Plexxikon Inc. v. Novartis Pharms. Corp.*,
2021 WL 1164749 (N.D. Cal. Mar. 26, 2021) .....................................................9

*Realtime Data, LLC v T-Mobile U.S.A., Inc.*,
No. 6:10-cv-493-RC-JDL, Dkt. 599 (E.D. Tex. Jan. 25, 2013) ........................15

*Saffran v. Bos. Sci. Corp.*,
2008 WL 9722424 (E.D. Tex. July 9, 2008) ......................................................22

*SimpleAir, Inc. v. Google Inc.*,
No. 2:11-cv-416-JRG, Dkt. 693 (E.D. Tex. Mar. 12, 2014) .............................16

*SSL Services, LLC v. Citrix Sys., Inc.*,
2012 WL 12906091 (E.D. Tex. May 24, 2012) .................................................19

*Stragent, LLC v. Intel Corp.*,
No. 6:11-cv-421-TBD-JDL, Dkt. 274 (E.D. Tex. Feb. 27, 2014).....................25

*Stratoflex, Inc. v. Aeroquip Corp.*,
713 F.2d 1530 (Fed. Cir. 1983) ........................................................................23

*Uniloc USA, Inc. v. Microsoft Corp.*,
    640 F. Supp. 2d 150 (D.R.I. 2009), *rev'd on other grounds*, 632 F.3d
    1292 (Fed. Cir. 2011)..................................................................................18

*United States v. Sine*,
    493 F.3d 1021 (9th Cir. 2007) ................................................................5, 6

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination
    Prods. Liab. Litig.*,
    405 F. Supp. 3d 612 (D.N.J. 2019).........................................................16

*Van v. Language Line Servs., Inc.*,
    2016 WL 3566980 (N.D. Cal. June 30, 2016)........................................20

*Vaporstream, Inc. v. Snap Inc.*,
    2020 WL 978731 (C.D. Cal. Feb. 28, 2020) (Huff, J.) .......................10

*Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*,
    602 F.3d 1325 (Fed. Cir. 2010) ........................................................14, 22

*Waddington North America, Inc. v. Sabert Corp.*,
    2011 WL 3444150 (D.N.J. Aug. 5, 2011) ................................................4

*Williams v. Board of Regents of Univ. Sys. of Ga.*,
    629 F.2d 993 (5th Cir. 1980) ....................................................................1

*Wisc. Alumni Research Found. v. Apple, Inc.*,
    2015 WL 5704356 (W.D. Wisc. Sept. 29, 2015) ...................................10

*Wyatt Tech. Corp. v. Malvern Instr., Inc.*,
    2010 WL 11505684 (C.D. Cal. Jan. 25, 2010) (Collins, J.)..................20

**Statutes**

35 USC § 311(b) ...............................................................................9, 10

Cal. Welfare & Institutions Code § 361(b)............................................25

U.S. Code Title 35 ...............................................................................25

**Other Authorities**

Fed. R. Evid. 103 ..................................................................................1

Fed. R. Evid. 104 ..................................................................................1

Fed. R. Evid. 106 ................................................................................21

Fed. R. Evid. 401 ...................................................................................................*passim*

Fed. R. Evid. 402 ...................................................................................................*passim*

Fed. R. Evid. 403 ...................................................................................................*passim*

Fed. R. Evid. 701 .......................................................................................................14, 23

Fed. R. Evid. 702 .......................................................................................................14, 23

Fed. R. Evid. 801 ...........................................................................................................13

Fed. R. Evid. 802 ........................................................................................................5, 13

Fed. R. Evid. 803 ...............................................................................................................5

Fed. R. Civ. P. Rules 26...............................................................................................13, 22

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Duplo U.S.A. Corporation ("Duplo USA") moves *in limine* regarding the following matters.  Motion *in limine* is abbreviated "MIL."

### II.   LEGAL STANDARD

This Court has authority to grant a motion *in limine* that excludes inadmissible evidence, as well as references by the parties, attorneys and witnesses to the inadmissible evidence.  *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Medlock v. Taco Bell Corp.*, 2016 WL 430438, at *2 (E.D. Cal. Feb. 4, 2016) (quoting *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) ("[A] motion *in limine* is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings.")).  The court may also hear and determine questions of the admissibility of evidence outside the presence of the jury.  *Williams v. Board of Regents of Univ. Sys. of Ga.*, 629 F.2d 993, 999 (5th Cir. 1980); *see also* Fed. R. Evid. 103(d), 104(c).

### III.   MIL NO. 1: MGI'S LITIGATION IN FRANCE AGAINST THIRD PARTIES

MGI intends to present evidence concerning MGI's French litigation against foreign Duplo-named entities (not the defendant here).  Yet the Court has already granted Duplo USA's *Daubert* motion (Dkt. 207) as to damages evidence from the French litigation, finding it irrelevant because "[t]he French litigation involved different patents and different laws."  Dkt. 317 at 17.  Indeed, courts routinely preclude evidence of other litigations as irrelevant, hearsay, and unfairly prejudicial.  *See, e.g., Ohio House LLC v. City of Costa Mesa*, 2022 WL 2189541, at *2 (C.D. Cal. Mar. 28, 2022) (Selna, J.) (excluding "evidence of prior litigation" under FRE 401, 801, and 403); *Masimo Corp. v. Apple Inc.*, 2023 WL 3432126, at *1 (C.D. Cal. Mar. 15, 2023) (Selna, J.) (excluding "references to other litigations and proceedings"); *Grace v. Apple Inc.*, 2020 WL 227404, at *1-2 (N.D. Cal. Jan. 15, 2020); *Novartis*

*Pharms. Corp. v. Teva Pharms. USA, Inc.*, 2009 WL 3754170, at *9 (D.N.J. Nov. 5, 2009) (same).  The Court should do the same here—preclude MGI from introducing any evidence or argument regarding its French litigation, including (1) damages based on documents and information obtained from the French litigation, (2) French court decisions, and (3) French "bailiff reports."[1]

As to issue (1), the Court should preclude MGI from presenting about the French litigation in support of its damages theory.  This Court has already found that evidence related to the French litigation does not have a "meaningful relationship" to damages and thus struck portions of MGI's expert's report that relied on such evidence. Dkt. 317 at 17.  Arguments and evidence offered in that proceeding do not tend to show the amount of damages, or any other material factual dispute, that will come before the jury in this case, not least because, as the Court recognized, "[t]he French litigation involved different patents and different laws." *Id.*  Therefore, such evidence is irrelevant, especially where Duplo USA was not even a party to that litigation.  *See* Fed. R. Evid. 401, 402.  Moreover, admitting evidence concerning other litigations creates a trial within a trial and is "likely to give rise to time-consuming tangents about the merits of those [proceedings]" especially when the procedural history of those proceedings "is complex and long-running." *Grace*, 2020 WL 227404, at *3; *see* Fed. R. Evid. 403.  For those reasons, a broader *in limine* order is warranted that precludes MGI from offering such evidence or argument at any point in trial, including through experts or fact witnesses.

As to issue (2), the Court should preclude argument or evidence about the French litigation and decisions, including liability issues.[2]  As background, the French court found infringement on one counterpart patent, and found invalidity on another

---

[1] MGI has informed Duplo USA that it will file a "Motion to Admit Documents Concerning the French Litigation."  Duplo USA asked for identification of specific documents MGI seeks to admit but did not receive the requested information by the deadline to file this motion.  Duplo USA reserves the right to address specific French litigation exhibits (not discussed here) in opposition to MGI's motions *in limine*.

[2] MGI currently has included numerous exhibits in the Joint Exhibit List related to the French proceedings that it has indicated it may rely on at trial.  *See, e.g.*, Trial Ex. Nos. 431, 533, 653–55, 661–69, 870–78, 912.  These should be excluded.

counterpart. The French court found that the '067 patent's foreign counterpart was infringed, but this Court has now entered summary judgment that the '067 patent is *not infringed*. Dkt. 317. It will not be part of the trial. The French court found that the '031/'806 patents' foreign counterpart is *invalid*. Yet MGI seeks to introduce prejudicial French court orders finding infringement of the '067 foreign counterpart. Not only is the French court's infringement finding irrelevant and prejudicial, but its

**PROHIBITS** DUPLO FRANCE, either directly or indirectly, through any natural person or legal entity, from continuing to import, manufacture, offer for sale, promote, sell, use and/or possess the DuSense DDC-810 machine in France for the aforementioned purposes, subject to a fine of 50,000 euros for each infringement detected after 30 days from the date of service of this judgment and for a period of eight months,

**ORDERS** DUPLO FRANCE to provide MGI DIGITAL TECHNOLOGY, subject to a fine of 1,000 euros per day of delay at the end of a period of 45 days from notification of the judgment, with a summary statement, certified by a chartered accountant, of the infringing assets, namely:

orders (example below) include highly prejudicial language. Trial Ex. 654 at 32-33.

Courts routinely exclude foreign litigation evidence as it only confuses and distracts the jury from their determination of infringement or invalidity. *See Enova Tech. Corp. v. Initio Corp.*, 2013 WL 12156023, at *1 (D. Del. Jan 31., 2013) (finding evidence or argument regarding foreign patent proceedings or disputes involving foreign patent rights "is not relevant and, even if it were, its probative value would be substantially outweighed by the danger of unfair prejudice and confusion, making exclusion proper under Fed. R. Evid. 403"); *Edwards Lifesciences LLC v. Medtronic CoreValve LLC*, 2014 WL 12927825, at *1 (D. Del. Jan. 2, 2014) (excluding reference to foreign litigations because "[p]roceedings and the decisions arising from proceedings conducted in foreign jurisdictions, under foreign substantive law and foreign procedural rules, and concerning a foreign patent that is not at issue in the instant action, are of dubious probative value"); *3Com Corp. v. Realtek Semiconductor Corp.*, 2008 WL 783383, at *5 (N.D. Cal. Mar. 24, 2008) (excluding evidence relating to a Taiwanese proceeding as prejudicial); *Illumina, Inc. v. BGI*

*Genomics Co., Ltd*, 2021 WL 4979799, at \*9 (N.D. Cal. Oct. 27, 2021) (precluding reference to foreign litigations); *Waddington North America, Inc. v. Sabert Corp.*, 2011 WL 3444150, at \*6 (D.N.J. Aug. 5, 2011) (excluding evidence of foreign patent proceeding, finding that "any relevance, which doesn't seem to be there, would be overwhelmed by confusion, the delay and all the rest of it …."). The evidence MGI seeks to introduce, including the example shown above, is especially problematic since it would suggest to the jury that Duplo USA's products infringe the patents at issue here, and that Duplo should be fined. This would be improper even if the French finding of infringement related to the '031 and '806 foreign counterpart. But it is not—the French decision related to the '067 patent's counterpart (which is no longer at issue in this case). MGI should not be permitted to use this evidence to sway the jury to a finding of infringement. Evidence from the French litigation—whether documents, testimony, or argument—should be excluded.

Evidence related to MGI's foreign litigation also has no probative value to willful infringement, yet it would be highly prejudicial. Willful infringement turns upon Duplo USA's state of mind with respect to ***the asserted patents***—not foreign patents that issued at different times, contain different limitations, and are construed under an entirely different legal system. *See, e.g.*, *Waddington*, 2011 WL 3444150, at \*6 (rejecting admission of foreign proceeding, including to show state of mind: "we're not going to bring it in for the state of mind. I mean, the whole thing is what's going on in some foreign proceeding with different claims, different issues, et cetera."). Further, as already explained, French court only found liability for the '067 counterpart, which this Court found non-infringed, while it invalidated the '031/'806 counterpart. Dkts. 317 at 26, 222-2 at 27. Thus, reference to the French litigation, even for the purpose of arguing willfulness, would present a high risk of confusing and misleading the jury, as the jury may be led to believe that it should give weight to aspects of the French court's findings. It would force Duplo USA to spend time explaining the French's court's findings and opinions, the differences in the foreign

patents, French substantive and procedural law, and the parties' arguments in France—creating a complex, confusing, and wasteful trial within a trial.

Such evidence and argument should also be excluded under FRE 802. "A court judgment is hearsay to the extent that it is offered to prove the truth of the matters asserted in the judgment," and "the introduction of discrete judicial fact findings and analysis underlying the judgment to prove the truth of those findings and that analysis constitutes the use of hearsay." *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007). Therefore, "unless [a prior judicial] order comes within" one of the "[t]wo hearsay exceptions in the Federal Rules of Evidence [that] explicitly allow for the admission of judgments"—Rules 803(22) and 803(23), **neither of which applies here**[3]—"references to the order should not…be[] allowed." *Id.*; *see Ohio House*, 2022 WL 2189541, at *2 ("To the extent [a party] wishes to present to the jury the actual prior rulings [of related litigation], such evidence would be [inadmissible] hearsay.").

As to issue (3), the Court should preclude MGI from introducing argument or evidence relating to French "bailiffs" or documents styled as "bailiff reports," which use words like "infringement," "seizure" and "counterfeit." *See, e.g.*, Exs. 1, 2, 3). As MGI's counsel describes it, "a French Bailiff is somewhat akin to a U.S. Notary Public." Ex. 4. They are neither judges nor technical experts. These bailiff reports that MGI seeks to introduce—which are on MGI's exhibit list and also discussed by MGI's infringement expert—are highly prejudicial and misleading because they would confusingly give the appearance of authority and French judicial approval. For example, these documents are stamped with a seal and written in formal language. But these French bailiffs are neither judges nor technical experts. In fact, they were **hired and paid by MGI**. As MGI's counsel describes it, "a French Bailiff is somewhat akin to a U.S. Notary Public." Ex. 4.

One of these bailiff reports is titled "Procès Verbal De Saisie Contrefaçon (translated as "Seizure of Counterfeit Report") and describes alleged "infringement

---

[3] FRE 803(22) involves criminal convictions, and FRE 803(23) is limited to judgments that prove "a matter of personal, family, or general history.

seizure operations" against the French Duplo-named entity.  Ex. 4.  Notably, at the time of the bailiff report, the French court had not even rendered any infringement findings, let alone that the products were counterfeit.  In reality, a Saisie Contrefaçon is an *ex parte* evidence-gathering procedure, and the report was prepared by an MGI-hired bailiff to document the procedure.

Another bailiff report, similarly stamped with a bailiff's seal, is titled "Affidavit of Process Server."  Ex. 1.  In this report, the MGI-hired bailiff purports to "conduct all relevant observations concerning the positioning of elements" of an accused printhead.  *Id.*  The report proceeds to note comments made by MGI employee Mr. Baneat and MGI French attorney Mr. Debay as they disassembled the printhead, for example: "According to Mr. Debay who was right there, 'they are heating resistors.'"  *Id.* at MGI_010118.  And the bailiff selectively noted observations about the printhead structure, for example: "I observed again that the sensor was upstream of the heating element and downstream of the cartridge . . ."  *Id.* at MGI_010105.  These statements relate to limitations in the claims of the '031 and '806 patents.  But this bailiff is not an expert—Mr. Baneat (the witness that Duplo USA has challenged his credibility based on whispering at his deposition), who worked with the bailiff, does not know whether he has any technical qualifications, or how much he was compensated by MGI.

In short, reference to French bailiffs and their reports is both irrelevant and highly prejudicial.  A report from a French Bailiff tearing down a product in France, for a French case involving foreign patents, is not relevant to these proceedings.  The Ninth Circuit has addressed the prejudice issue: "jurors are likely to defer to findings and determinations ... made by an authoritative, professional factfinder rather than determine those issues for themselves," so "such evidence should [generally] be excluded under Rule 403."  *United States v. Sine*, 493 F.3d 1021, 1033–34 (9th Cir. 2007); *see also Enova Tech. Corp. v. Initio Corp.*, 2013 WL 12156023, at *1 (D. Del. Jan 31., 2013) (evidence of foreign patent proceedings "is not relevant and, even if it

were, its probative value would be substantially outweighed by the danger of unfair prejudice and confusion, making exclusion proper under Fed. R. Evid. 403"); *3Com Corp. v. Realtek Semi. Corp.*, 2008 WL 783383, at *5 (N.D. Cal. Mar. 24, 2008).  A limiting instruction will not cure the unfair prejudice because, once the bell is rung, the harm is cemented.  The case will then devolve into a trial within a trial as Duplo USA attempts to undo the prejudicial impact, and in the end the jury will be unlikely to appreciate the nuances of the French court's decisions, a French bailiff's role, or the proper significance of these decisions and reports.  There is a substantial risk that the jury will abdicate its responsibility to independently determine disputed factual issues regarding the accused products and give undue weight to evidence with an imprimatur of a French court or French bailiff, which are about European patents.

For the above reasons, the Court should exclude the evidence, testimony, and arguments related to or from MGI's French litigation as identified herein.

## IV.   MIL NO. 2: PTAB AND INTER PARTES REVIEW

The Patent and Trademark Appeal Board (PTAB), on December 4, 2023, denied—on discretionary grounds—two Duplo USA *inter partes* review petitions (IPRs).  *See* Dkts. 291-1, 291-2.  These denials were procedural in nature and not on the merits.  MGI has made it known that it intends to introduce evidence relating to these PTAB's discretionary denials.

Duplo USA moves to preclude MGI from offering any evidence or argument relating to Duplo USA's requests for IPR, P.T.A.B. Case No. IPR2023-00935 and IPR2023-00936 ("Duplo USA's IPRs").[4]  *See Id.*  MGI should not be allowed to tell the jury, for example, that the PTAB denied Duplo USA's invalidity arguments when the PTAB never ruled on the merits of Duplo USA's arguments—such evidence has no probative value and would be misleading and highly prejudicial. Although there is

---

[4] MGI currently has included several exhibits in the Joint Exhibit List related to the IPR proceedings that it has indicated it may rely on at trial.  *See, e.g.*, Trial Ex. Nos. 788–90, 817, 822–23.  These should be excluded.

some overlapping prior art, both the record and arguments presented at trial will be different from those presented to the PTAB in Duplo USA's petitions.

It is well-established that the PTAB's institution decisions are not final decisions, have no preclusive effect, and rarely, if ever, have any probative value in district court proceedings. Courts, including in this District, routinely grant motions *in limine* to preclude reference to PTAB proceedings generally, and in particular to **non-institution decisions**, which is the case here. *See Nichia Corp. v. Vizio, Inc.*, 2019 WL 1966665, at *4 (C.D. Cal. Mar. 25, 2019) (Otero, J.).[5] As Judge Otero explained,

> The conclusions of the PTAB in declining to institute an IPR have minimal, if any, bearing on the factual determinations that the jury must make. Allowing the jury to review these decisions creates a substantial risk that they may choose to simply adopt those conclusions. Had Congress intended for denials of institutions to have a bearing on later actions, it would have given those decisions preclusive effect. It did not and the law is clear that "[a] non-institution decision . . . is not a final written decision and is not entitled to preclusive effect." *Judge Med Cardiology Div. Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375 (Fed. Cir. 2014). For this reason, Defendant's MIL # 3 is GRANTED.

---

[5] *See also MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, Case No. 14-cv-03657-SI, slip op. at 2 (N.D. Cal. Jul. 18, 2019) ("Neither party will be allowed to mention any post-issuance proceedings at the USPTO, past or pending, for risk of jury confusion"); *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4560071, at *14 (N.D. Cal. Aug. 22, 2016) (excluding reference to PTAB non-institution decisions, finding any probative value will be "far outweighed by likely confusion to the jury" and that "it would take a significant amount of time and effort to adequately explain the relevance and limitations of PTO proceedings to the jury"); *Evolved Wireless, LLC v. Apple, Inc.*, 2019 WL 1100471, at *3 (D. Del. Mar. 7, 2019) (granting motion to preclude mention of non-institution decision, rejecting plaintiff's argument that "the fact the PTAB declined to institute IPR proceedings—a finding that the defendants failed to demonstrate a reasonable likelihood of invalidity under the lower standard applied by the PTAB is highly probative of validity and should be heard by the jury"); *Bio-Rad Labs., Inc. v. 10x Genomics, Inc.*, 2018 WL 6629705, at *1 (D. Del. Oct. 12, 2018) (precluding reference to PTAB denial of IPR petition because "failure to institute an IPR has little or no probative value" and should be excluded under FRE 403).

*Nichia*, 2019 WL 1966665, at *4. Some district courts apply this as the "general rule." *See, e.g.*, *Plexxikon Inc. v. Novartis Pharms. Corp.*, 2021 WL 1164749, at *1–2 (N.D. Cal. Mar. 26, 2021). The Federal Circuit has cautioned that "ongoing proceedings and *denials of institution provide limited probative value* that is likely to be outweighed by the prejudice to the opposing party, and limiting instructions to the jury do not necessarily cure the prejudice." *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1351–52 (Fed. Cir. 2019) (emphasis added).

There is no reason to depart from this general rule. First, the PTAB's decisions at issue are based on discretionary grounds and were based on a preliminary and incomplete record. *See, e.g.*, *Innovationpool GmbH v. Google Inc.*, 2016 WL 11531119, at *2 (D. Del. May 16, 2016) (Dyk, Federal Circuit C.J., sitting by designation) ("[T]he PTAB's decision not to institute was reached on a record that was less than complete and without the benefit of a full adversarial proceeding ... the danger of prejudice and confusion outweighs the probative value of this evidence …."). The facts here are especially compelling, since the PTAB's institution denials were discretionary and not on the merits of the prior art: "Given the late stage of the parallel District Court Proceeding, the substantial investment by the parties in that proceeding, and the lack of strong countervailing considerations, the evidence of record favors exercising our discretion to deny institution of an inter partes review." Dkts. 291-1 at 27, 291-2 at 32. The PTAB thus never reached a final determination concerning the merits of Duplo USA's asserted invalidity grounds and the validity of MGI's patents. As such, any evidence related to IPR proceedings would be confusing to the jury and mislead them into believing that the PTAB already has analyzed the merits of the patents and prior art, when the denials were based on procedural grounds.

Second, the PTAB's decisions relate to only a subset of the invalidity arguments that Duplo USA will assert. Notably, IPR proceedings are limited to prior art "consisting of patents or printed publications." 35 USC § 311(b). In this litigation, by contrast, Duplo USA's anticipation references and/or primary references in

obviousness combinations include systems, such as the KM512 system, EB100, and XY100. The PTAB was barred by statute from considering those references as prior art in IPR. *See id.* The evidence that the jury may evaluate concerning those systems—including inventor testimony—was not (and could not have been) considered by the PTAB. Duplo USA further asserts an inventorship challenge under section 101 that the PTAB never considered. Thus, in view of the differences in invalidity grounds and arguments presented before the PTAB and at trial, the decisions and findings of the PTAB have at most marginal probative value.

Finally, no limiting instruction would cure the prejudice because the jury is unlikely to understand the nature of an IPR proceeding, what was at issue there, and the PTAB's role (particularly in rendering a discretionary institution decision). *Chamberlain*, 935 F.3d at 1351–52; *Vaporstream, Inc. v. Snap Inc.*, 2020 WL 978731, at *8 (C.D. Cal. Feb. 28, 2020) (Huff, J.) ("Introduction of IPR proceedings to the jury would likely require an explanation of nature of IPR proceedings and PTAB's role ... consum[ing] a significant amount of time and potentially lead[ing] to jury confusion over the invalidity issues in the case."); *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 2:12-cv-68, Dkt. 232 at 2 (E.D. Tex. Nov. 8, 2013) (excluding IPR proceedings because danger of unfair prejudice cannot be mitigated by limiting instruction); *Wisc. Alumni Research Found. v. Apple, Inc.*, 2015 WL 5704356, at *5-6 (W.D. Wisc. Sept. 29, 2015) (difficult for jury to understand, much less apply, nuanced differences between PTAB proceeding and district court case; and risk of unfair prejudice to defendant could not be cured by jury instruction).

Therefore, MGI should be precluded from presenting evidence or argument relating to Duplo USA's IPRs, including the PTAB's non-institution decisions.

## V. MIL NO. 3: ABSENCE AT TRIAL OF ANY DUPLO USA PRE-LITIGATION OUTSIDE COUNSEL

MGI should be precluded from introducing evidence or arguments regarding the absence at trial of any Duplo USA current or former attorney under FRE 401, 403,

and 408. The presence or absence of such individuals does not "ha[ve] any tendency to make a fact more or less probable than it [otherwise] would be," nor are those "fact[s] of consequence in determining the action." Fed. R. Evid. 401.

MGI put on its exhibit list correspondence from 2017 between MGI's counsel and Duplo USA's pre-litigation outside counsel. MGI sought no discovery from these individuals and should be precluded from making an empty chair argument as irrelevant and unfairly prejudicial. For example, the jury could infer from the absence of such a witness that he/she does not agree with the positions and defenses Duplo USA is asserting in this action or that the individual's absence is tied to an attempt to hide a fact from the jury. Such inferences would be improper and would unfairly prejudice Duplo USA, in addition to causing unnecessary confusion and a waste of the jury's time. *See e.g.,* Fed. R. Evid. 403.

References Duplo USA's counsel's absence at trial should thus be excluded.

## VI.    MIL NO. 4: MGI'S INFRINGEMENT ACCUSATIONS AGAINST THIRD PARTIES AND 2017 ACCUSATIONS AGAINST DUPLO USA

MGI's witnesses in this case have referenced allegations of infringement against third parties: namely Schmid Rhyner, JetFx, and Manroland.[6] Some of these accusations relate to activities outside of the United States. Presenting such testimony or evidence at trial is confusing and unfairly prejudicial because it suggests to the jury that MGI's sending letters to third parties lends credence to MGI's infringement accusations against Duplo USA in this case.

MGI should be precluded from introducing such allegations against third parties. Whether MGI accused third parties of infringement has no bearing on whether its claims against Duplo USA have merit. Indeed, some of this activity was outside the United States, thus involving alleged foreign rights. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without

---

[6] MGI currently has included several exhibits in the Joint Exhibit List that relate to its past accusations of infringement against third parties that it has indicated it may rely on at trial. *See, e.g.,* Trial Ex. Nos. 883, 203. These should be excluded.

the evidence …." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. MGI must establish at trial that Duplo USA has infringed MGI's U.S. patents. Whether MGI sent letters to third parties, pursued such claims through cease-and-desist letters or complaints, or obtained negotiated settlements does not establish any element of the claims against Duplo USA. *See, e.g.*, *Habersham Plantation Corp. v. Molyneux*, 2011 WL 13216995, at *9 (S.D. Fla. Dec. 5, 2011) (excluding evidence and argument by plaintiff regarding any claim, lawsuit, settlement, consent decree, verdict, or judgment). Nor do any of Duplo USA's defenses open the door for such irrelevant evidence, for Duplo USA does not challenge MGI's policing efforts.

Moreover, the *Georgia Pacific* factors do not change the outcome—the Court should nonetheless exclude it as unfairly prejudicial. *See* Fed. R. Evid. 403; *Guajome Park Acad., Inc. v. Duperry*, 2008 WL 11337592, at *2 (S.D. Cal. Mar. 12, 2008) (excluding four cease-and-desist letters sent by plaintiff's counsel to non-defendants). Whether MGI has accused third parties of infringement (even of the patents-in-suit) has no bearing on whether Duplo USA did so. Allowing MGI to introduce evidence that it has accused others of infringement could mislead the jury into believing that it successfully enforced its patents and that Duplo USA is similarly liable. Such assertions relate to differently situated parties, with different products, and different motivations. It would be confusing and misleading to allow the jury to hear such evidence under the guise that it should upwardly influence the royalty rate, and it would unfairly prejudice Duplo USA by forcing it spend precious trial time explaining why the assertions are different and not relevant. The probative effect, if any, is substantially outweighed by the unfairly prejudicial nature of such evidence. The Court should thus preclude MGI from making any reference to, or introducing any evidence relating to, MGI's infringement accusations against third parties.

MGI should also be precluded from introducing testimony or evidence concerning its 2017 letter correspondence with Duplo USA in which it accused Duplo USA of infringing five MGI patents—***only two of which are involved in the trial***.

*See, e.g.*, Trial Ex. Nos. 203, 630. First, MGI's accusations contained in its 2017 letters are hearsay and are not admissible to prove the truth of the infringement allegations within them. *See* Fed. R. Evid. 801, 802. The only fact these letters could be offered to prove is that Duplo USA received notice of MGI's claims. But that fact is not disputed in this action. Moreover, the letters would be grossly prejudicial and misleading. The jury, seeing *five patents* asserted in the letters, would negatively infer that this trial is just the tip of the iceberg, that Duplo USA is potentially infringing other patents, and that MGI is likely suing (or has sued) Duplo USA for infringement of those patents. The reality, however, is that the three additional patents are detrimental to *MGI's case*. Specifically, one of the patents is the '067 patent, which the Court has found not infringed on summary judgment. Dkt. 317 at 26. Another patent is the '449 patent, which MGI originally asserted in this litigation, but then dropped after the close of discovery. The Court directed that patent to be dismissed. *Id.* at 30. MGI never asserted the fifth patents. Yet, if MGI is allowed to present those letters to the jury, would create the need for a mini-trial within the larger trial in which Duplo USA would have to spend time explaining what happened with those patents, including the procedural background related to the '067 and '449 patents, standard for summary judgment, and merits of its positions. This will cause a significant waste of time of the jury, the Court, and the parties, and would unfairly prejudice Duplo USA by forcing it to use trial time to refute the negative inference. Therefore, the MGI 2017 letters should be excluded.

## VII. MIL NO. 5: INFRINGEMENT OR VALIDITY FROM ANY MGI EMPLOYEE OR FORMER MGI OR MGI USA EMPLOYEE

MGI should be precluded from offering inadmissible opinion testimony by named inventor Edmond Abergel or other MGI/MGI USA current or former employees regarding infringement or validity of MGI patents. No MGI employee has provided any disclosure of expert testimony under Rule 26(a)(2). Lay witnesses are "limited" to opinion testimony "that is … not based on scientific, technical, or other

specialized knowledge within the scope of Rule 702." FRE 701. Any patent testimony from MGI employees, for example comparing the patents to the accused products, MGI's products, or the prior art, would thus be inadmissible under FRE 701 and also highly prejudicial. *See e.g.*, *Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1339 (Fed. Cir. 2010) (inventors not allowed to offer expert testimony on invalidity issues); *Cordance Corp. v. Amazon.com, Inc.*, 631 F. Supp. 2d 477, 483-84 (D. Del. 2009).

Mr. Abergel's deposition suggests that MGI may try to elicit trial testimony that Duplo's products infringe, that MGI's products practice the patents, and that the patents are valid. *See* Ex. 5 at 121:12-13 ("I know that because I'm an expert . . ."); 87:14-18 ("I am stating this as an expert and as an engineer . . ."). Mr. Abergel further opined on infringement: "[T]hese printheads are close to what is used in our patents. I would even go as far as to say that they violate or infringe our patents." Ex. 6 at 306:16-19. The Court should preclude testimony and argument from MGI's lay witnesses that intrude into the province of qualified experts.

## VIII. MIL NO. 6: MGI'S PURPORTED COMMUNICATIONS WITH NON-PARTY DUPLO ENTITIES AND DUPLO USA'S CORPORATE RELATIONSHIP WITH THOSE ENTITIES

MGI has indicated that it may rely on alleged communications that Mr. Abergel had in France (during the proceedings in France) with Duplo France and Duplo Corporation. MGI has indicated it may try to impute this to Duplo USA.

Any testimony, evidence, or argument pertaining to MGI's alleged communications with non-party Duplo entities would be highly prejudicial and would confuse the jury. As such, MGI testimony about Duplo France or Duplo Corporation in the context of the French litigation—to which Duplo USA was not a party—are not probative of any fact at issue in this case and are irrelevant. Fed. R. Evid. 401 & 402.

Also, any evidence or testimony concerning Duplo Corporation's ownership stake in Duplo USA, and references by MGI to the non-party Duplo-named entities

DUPLO U.S.A.'S MOTIONS *IN LIMINE* NOS 1-13
Case No. 8:22-cv-00979-DOC-KES

as Duplo USA's "parent" or "sister" organization, should be excluded.[7]  There has been no finding in this case that Duplo Corporation (which owns 28% of Duplo USA) is Duplo USA's "parent."  *See* Dkt. 136 (finding no "control").  Similarly, there is no evidence of the relationship between Duplo France, S.A.R.L., Duplo Corporation, and Duplo USA so as to justify referring to Duplo France as Duplo USA's "sister."  Evidence concerning Duplo USA's relationship with other Duplo-named entities is thus irrelevant under FRE 401 and 402.

Moreover, any alleged probative value is far outweighed by the resulting prejudice, as well as the danger of confusing the issues and misleading the jury.  *See* Fed. R. Evid. 403.  There is no valid ground to permit MGI to conflate such entities with and/or impute their actions or knowledge to Duplo USA.  The only conceivable reason for MGI to proffer any testimony regarding non-party Duplo-named entities (like Duplo Corporation), or attempt to refer to those entities as Duplo USA's "parent" or "sister," would be to conflate such entities with and/or impute their actions or knowledge to Duplo USA, which other courts have recognized as improper.  *See, e.g.*, *Realtime Data, LLC v T-Mobile U.S.A., Inc.*, No. 6:10-cv-493-RC-JDL, Dkt. 599 at 2 (E.D. Tex. Jan. 25, 2013) (excluding remarks imputing improper acts by non-party Flash Networks to defendant T-Mobile).  The risk of juror confusion is substantial, given the similarities in name between various Duplo-named entities, and the jury's presumed lack of familiarity with the corporate and legal distinctions between Duplo USA and other Duplo-named entities.  For this reason, a limiting jury instruction would fall well short of mitigating the prejudicial effect of allowing such testimony.

Accordingly, all testimony, evidence, or argument pertaining to (1) MGI's communications with Duplo France and Duplo Corporation in the context of the French litigation, and (2) Duplo Corporation's ownership stake in Duplo USA and

---

[7] MGI has solicited such testimony during the deposition of Duplo USA witnesses, including Peter Tu and Rick Salinas.

DUPLO U.S.A.'S MOTIONS *IN LIMINE* NOS 1-13
Case No. 8:22-cv-00979-DOC-KES

Duplo USA's shareholders and Directors, in addition to references to non-party Duplo-named entities as Duplo USA's "parent" or "sister," should be excluded.

## IX.    MIL NO. 7: FUNDING OF THE LITIGATION

Evidence regarding litigation funding has nothing to do with any issues being tried and will unfairly prejudice Duplo USA under FRE 403.  Yet, MGI's filings to date suggest its intention to present this irrelevant and prejudicial evidence at trial. Dkt. 275-1 at 16 (referring to Duplo Corporation's agreement with Duplo USA to share litigation expenses); Dkt. 257-2 at 44–45.  As such, parties routinely agree to motions *in limine* pertaining to relationships between a party and its counsel.  *See, e.g.*, *SimpleAir, Inc. v. Google Inc.*, No. 2:11-cv-416-JRG, Dkt. 693 at 4 (E.D. Tex. Mar. 12, 2014) ("No argument or evidence about attorneys' fees . . . or contingency fee arrangements"); *Patent Harbor, LLC v. Audiovox Corp.*, No. 6:10-cv-361-LED-JDL, Dkt. 538 (E.D. Tex. Sept. 27, 2012); ("The parties' attorneys' fee arrangements or any changes in counsel").

Where parties have not agreed to exclude evidence of litigation funding, courts, including this one, regularly grant motions to exclude such evidence.  *See, e.g.*, *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. 8:20-cv-00847-DOC-JDE, Dkt. 369 at 5 (C.D. Cal. Aug. 17, 2022) (Carter, J.) (granting motion *in limine* that "Medtronic shall not introduce any reference to, evidence, or argument that Colibri obtained litigation funding"); *Pinn, Inc. v. Apple Inc.*, 2021 WL 4777134, at *2 (C.D. Cal. July 14, 2021) (Carter, J.) (Pinn MIL 3) ("GRANTED so as to exclude evidence or argument regarding: (1) litigation funding …."); *AVM Techs., LLC v. Intel Corp.*, 2017 WL 1787562, at *3 (D. Del. May 1, 2017) (excluding evidence of litigation funding as irrelevant, unfairly prejudicial, and confusing to the jury); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) ("[L]itigation funding is irrelevant to the claims and defenses in the case.").

The Court should thus preclude MGI from soliciting or presenting at trial any evidence, testimony, or argument regarding Duplo USA's litigation funding and attorney fee compensation.

## X.    MIL NO. 8: PEJORATIVE STATEMENTS LIKE COPIED, STOLE, MISAPPROPRIATED, OR PIRATED MGI'S PRODUCT

MGI has refused to agree that it will not make the express or implied argument that Duplo USA copied (or use other pejorative terms) its alleged invention.  But MGI has not advanced *any* theory of copying in this litigation and likewise has not adduced *any* evidence that Duplo USA (or any other individual or entity) copied a MGI product to develop the accused products.  Proof of "copying" requires a showing that Duplo USA copied a "product," not a patent or patent application.  *See Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004) (copying requires "substantial similarity to [] the patented product (as opposed to the patent).").  MGI has never identified any product of MGI's that it alleges Duplo USA copied.  Any allegation of copying is thus futile because it does not involve replication of any "product" and should therefore be excluded under FRE 401.

MGI, in its discovery responses and mandatory disclosures under the Joint Schedule (Dkt. 46), never alleged copying by Duplo USA or, indeed, anyone else.  Dkt. 223-31 15-16; Ex. 7 at 14–15.  MGI did not make any allegation regarding copying.  Nor has MGI asserted, let alone presented evidence, of secondary indicia of non-obviousness, including any allegation or evidence of copying.  Duplo USA's Interrogatory No. 6 sought "in detail the factual and legal basis and supporting evidence for any secondary indicia of non-obviousness … MGI contends exists relating to any asserted claim of any of the Asserted Patents."  Ex. 8 at 8–11.  MGI's response did not identify any information concerning alleged copying.  *Id.*  And MGI's technical expert, Dr. Stringham, did not provide any analysis about alleged copying as part of his opinion on objective evidence of non-obviousness.  Dkt. 217-9 at pp. 152-153.  Evidence or argument regarding alleged "copying" is thus irrelevant.

Further, any conclusory suggestion of copying carries a substantial risk of unfair prejudice. *See Asyst Techs., Inc. v. Empak, Inc.*, 2007 WL 120845, at *2 (N.D. Cal. Jan. 11, 2007) (finding that "[t]he proposed evidence of copying would be highly prejudicial" and excluding such evidence under FRE 403); *Eolas Tech., Inc. v. Microsoft Corp.*, 270 F. Supp. 2d 997, 1005 (N.D. Ill. 2003) (same); *Uniloc USA, Inc. v. Microsoft Corp.*, 640 F. Supp. 2d 150, 184 (D.R.I. 2009) ("the Court cannot now say Uniloc's abundance of copying 'evidence' was harmless insofar as its likelihood to confuse, distract and taint consideration of the other issues ...."), *rev'd on other grounds*, 632 F.3d 1292 (Fed. Cir. 2011). The Court should exclude any and all arguments regarding alleged copying—and the use of terms implying same—because it has no relevance, and any probative value is substantially outweighed by the danger of jury confusion and misleading the jury.

## XI.   MIL NO. 9: COURT OR SPECIAL MASTER RULINGS, OTHER THAN ACTUAL ADOPTED CLAIM CONSTRUCTIONS

The parties should be excluded from making any reference to, or presenting any evidence, or argument concerning any ruling from the Court or Special Master in this matter, such as the Court's rulings on summary judgment or motions to dismiss. With respect to claim construction, the parties should not be permitted to making any reference to, or presenting any evidence, or argument on any part of the claim construction proceedings other than the final dispositions set forth in claim construction order entered by the Court (Dkt. 317 at 51–53).[8]

***First,*** the Court's rulings on either party's motions and the underlying rationale, evidence, testimony, and arguments would lead to confusion of the issues and mislead the jury because such statements have no bearing on any issue before the jury. *See* Fed. R. Evid. 401 and 403; *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. 8:20-cv-00847-DOC-JDE, Dkt. 369 at 12 (C.D. Cal. Aug. 17, 2022) (Carter, J.)

---

[8] MGI currently has included at least one exhibit in the Joint Exhibit List related to Claim Construction proceedings before the Special Master that it has indicated it may rely on at trial. *See, e.g.*, Trial Ex. No. 776. This should be excluded.

("[T]he parties should be mindful to avoid presenting any discovery dispute to the jury and to avoid, for example, discussing the Court's summary judgment rulings or claim construction analysis in front of the jury."); *Gonzales v. Valenzuela*, 2002 WL 34700599, at \*4 (C.D. Cal. Oct. 7, 2002) (granting motion to exclude prior ruling because it would be prejudicial to the defendant).

*Second*, presenting anything on claim construction to the jury other than the final constructions would be confusing to the jury, irrelevant, and prejudicial. *See SSL Services, LLC v. Citrix Sys., Inc.*, 2012 WL 12906091, at \*1 (E.D. Tex. May 24, 2012) (prohibiting "Mention of Anything in the Claim Construction Order Other Than Formal Construction Issued by the Court or any Rearguing of Claim Construction.") MGI has indicated its intent to go beyond that. For example, MGI has listed the Special Master's Report & Recommendation on Claim Construction ("R&R") as an exhibit for trial. The R&R includes, for example, legal analysis, commentary on the parties' positions, and discussions of the patents that serve no probative value and would only confuse the jury. And any argument about what the Special Master meant in his R&R would multiply that confusion. The Court has reached formal, complete, final constructions (Dkt. 317), and MGI should not be able to present argument or evidence about these constructions beyond that.

## XII.  MIL NO. 10: PRETRIAL PROCEEDINGS, DISCOVERY DISPUTES, MOTION PRACTICE, OR ALLEGATIONS OF DENIED DISCOVERY

Disputes on discovery (and other pretrial) issues are not relevant to any determinations properly before the jury. As such, testimony or argument regarding discovery and other pretrial disputes should be precluded under FRE 401 and 402.[9] *See, e.g.*, *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. 8:20-cv-00847-DOC-JDE, Dkt. 369 at 12 (C.D. Cal. Aug. 17, 2022) (Carter, J.); *Mformation v. RIM*, 2012 WL 1142537, at \*2 (N.D. Cal. Mar. 29, 2012) ("Evidence of the parties'

---

[9] MGI currently has included at least one exhibit in the Joint Exhibit List related to proceedings related to discovery disputes before this Court that it has indicated it may rely on at trial. *See, e.g.*, Trial Ex. No. 787. This should be excluded.

discovery disputes are not relevant to the questions of patent validity and infringement, and thus should not be presented to the jury."). However, MGI's inclusion of discovery materials, reports and recommendations, minutes, and orders on its exhibit list—as well as deposition testimony solely related to MGI's motion to compel discovery outside of Duplo USA's legal control—demonstrate that MGI plans to reference discovery disputes in building its case at trial.

As the Court noted during the summary judgment hearing, arguments regarding discovery deficiencies were "for the discovery process," and now it is time for parties to "focus on the merits of the case." Ex. 9 at 138:8-24. Indeed, courts routinely preclude parties from arguing about discovery conduct and discovery disputes at trial, given their irrelevance to the issues for the jury's consideration and the likelihood they would confuse and unfairly prejudice the jury. *See Wyatt Tech. Corp. v. Malvern Instr., Inc.*, 2010 WL 11505684, at *16 (C.D. Cal. Jan. 25, 2010) (Collins, J.) ("A trial is not the appropriate forum in which to air [discovery] grievances and both parties are precluded from bringing any discovery disagreements to light at trial."); *Van v. Language Line Servs., Inc.*, 2016 WL 3566980, at *3–4 (N.D. Cal. June 30, 2016) (same); *Barnett v. Gamboa*, 2013 WL 174077, at *2 (E.D. Cal. Jan. 16, 2013) ("Evidence of discovery disputes between the parties or reference to whether Defendants' production complied with the rules governing discovery [is] not relevant" to the merits of plaintiff's case.); *Intell. Ventures II LLC v. FedEx Corp.*, 2018 WL 10638138, at *5 (E.D. Tex. Apr. 26, 2018) (same).

MGI, for example, should not be allowed to introduce any testimony or evidence regarding Duplo USA's and/or Duplo Corporation's alleged failure to provide technical documents related to Duplo Corporation's development of the DDC-810.[10] As the above-cited cases demonstrate, introduction of such evidence will not assist the trier of fact in resolving any issue in dispute but rather serves as an attempt to divert the jury's attention from the real issues in this case. Allowing MGI

---

[10] MGI's counsel has indicated during the parties' meet-and-confer that it intends to introduce such evidence at trial.

20

to present evidence of these disputes would "lead the jury to conclude that [Duplo USA] tried to gain an advantage by suppressing evidence," *Mformation Techs.*, 2012 WL 2339762, at *2—which is obviously prejudicial given that there has never been a finding of bad-faith, negligent, or intentional misconduct by Duplo USA. *See Brown v. Carr*, 2008 WL 167313, at *7 (S.D. Tex. Jan. 16, 2008) (a party "shall not suggest that [the opposing party] has withheld any evidence without first establishing bad faith out of the jury's presence").

MGI should also not be allowed to argue or present testimony that Duplo USA allegedly did not allow MGI to inspect the accused products. MGI's infringement expert, Dr. Ma, opines in her report: "Duplo USA denied a physical inspection of the Accused Instrumentalities, despite previous agreement to allow such an inspection." Dkt. 215-2 at ¶ 24. Such testimony about a discovery dispute by Dr. Ma would be highly prejudicial to Duplo USA; and it is far outside the scope of what could be considered Dr. Ma's expertise. Dr. Ma's claim is also untrue. MGI never issued a discovery request for inspection of Duplo USA's products during fact discovery, and only demanded an inspection by email ***after*** the close of fact discovery (contrary to MGI's and its expert's assertion, there was no "previous agreement" regarding inspection). MGI and Duplo USA also conferred about MGI's post-discovery inspection, and MGI did not follow up with its request.

Any presentation by MGI of such discovery (and other pretrial) disputes would require Duplo USA to explain the discovery process, the Federal Rules' requirements, present evidence of MGI's discovery abuses, and introduce additional briefing, hearing transcripts, and correspondence between counsel in which they negotiate and discuss the scope of discovery, in order to place MGI's evidence in the proper context. *See* Fed. R. Evid. 106. This kind of trial within a trial would waste the Court's and the jury's time, cause undue prejudice to Duplo USA, and confuse the issues. *See 640 Octavia, LLC v. Heinz-Pieper*, 843 F. App'x 924, 925 (9th Cir. 2021) (affirming

exclusion of evidence to "avoid[] 'side shows'"); *see also Barten State Farm Mut. Auto. Ins. Co.*, 2015 WL 11111309, at *4 (D. Ariz. Apr. 8, 2015).

The Court should therefore preclude all evidence and argument concerning the parties' discovery (and other pretrial) disputes and compliance with their discovery (and other pretrial) obligations.

## XIII. MIL NO. 11: MGI'S PRODUCTS PRACTICING ASSERTED PATENTS

MGI's experts—Dr. Stringham and Dr. Ma—unambiguously testified that they did not form an opinion as to whether the Jetvarnish products[11] practice the asserted claims. Ex. 10 at 156:1-5 ("Q: Do MGI's products practice any claims of the asserted patents? A: I don't know"); Ex. 11 at 138:10-13 ("Q Have you formed any opinions about whether any of MGI's products practice any of the asserted Patents? A No."). MGI's expert reports also did not contain any analysis regarding whether and how any MGI products practice the asserted claims. MGI and its witnesses should thus not be permitted to offer any testimony or argument that MGI practices the asserted claims. *See Saffran v. Bos. Sci. Corp.*, 2008 WL 9722424, at *5 (E.D. Tex. July 9, 2008) ("[I]f the expert provided no analysis for the proposition that the accused product practiced the claims, then the court would not allow the expert to offer that testimony."); *see also See Atmel Corp. v. Info. Storage Devices, Inc.*, 189 F.R.D. 410, 416 (N.D. Cal. 1999) ("To allow now [the expert witness] to testify on direct examination to matters deliberately ignored in the Rule 26(a)(2)(B) report would simply encourage litigants to evade the expert-disclosure rules.").

Further, MGI should not be permitted to overcome this defect through expert opinion veiled as fact witness testimony. *See Verizon*, 602 F.3d at 1339 (affirming preclusion of inventors offering expert testimony on issues for which they had not provided expert reports or been qualified as experts); *see also Cordance*, 631 F. Supp. 2d at 483-84 (striking inventor's declaration that provided opinion testimony on

---

[11] ALPHAJET; JETVARNISH 3D WEB COLOR+; JETVARNISH 3D EVO; JETVARNISH 3D; JETVARNISH 3DS; JETVARNISH 3D ONE; and JETVARNISH 3D WEB (collectively, "the Jetvarnish products").

infringement and validity). Lay witnesses are "limited" to opinion testimony "that is … not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FRE 701. Proof that a patentee's product practices an asserted claims requires a mapping of the claims (considering the Court's claim constructions) to the product. Lay witnesses that MGI will put up at trial should not be allowed to do anything of the sort and should not be allowed to testify that the Jetvarnish products practice the patents. Fed. R. Evid. 402, 403. Any unsupported assertions that the Jetvarnish products practice or embody the asserted patents should be excluded because they are irrelevant, and any probative value is substantially outweighed by the dangers of confusing the issues and misleading the jury. Fed. R. Evid. 402, 403.

Finally, and relatedly, MGI should be precluded from arguing that any alleged commercial success of its products (including any alleged awards) evidences patent non-obviousness. The commercial success of a product is only relevant when a plaintiff can demonstrate a "nexus" between the claimed invention and the sales of plaintiff's products. Here, there can be no nexus, at least because MGI has not demonstrated that its products even practice the claimed inventions. Thus, sales of its products are irrelevant. *See, e.g.*, *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1324-25 (Fed. Cir. 2004). "A nexus is required between the merits of ***the claimed invention*** and the evidence offered, if that evidence is to be given substantial weight enroute to conclusion on the obviousness issue." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1539 (Fed. Cir. 1983) (emphasis added). However, the expert disclosures of MGI's experts, Drs. Ma and Stringham, disclose no analysis demonstrating a nexus between the Jetvarnish products and the claimed invention. *See Stratoflex*, 713 F.2d at 153. It thus follows from MGI's failure to adduce admissible evidence concerning whether and how its Jetvarnish products practice the asserted claims and the legal requirement that MGI show a nexus between the two that MGI should be precluded from proffering testimony or argument concerning the commercial success of its products.

Because neither MGI expert disclosed in his/her expert report any evidence or analysis demonstrating how any of the Jetvarnish products practice the asserted claims, the Court should preclude MGI from introducing any such opinions at trial.

## XIV.  MIL NO. 12: KONICA MINOLTA SALES ACTIVITIES

MGI should not be allowed to offer testimony, evidence, or arguments regarding Konica Minolta's pricing, bundling, and customers in the United States. MGI's corporate designee on the topic of the "identity" of customers who purchase MGI's products in the United States, "the price paid" for MGI's product by" each customer in the United States," and "discounts offered and provided" (Topic 34) was Michael Abergel.  Ex. 12 at 166:23-167:13. At his deposition, Mr. Abergel unequivocally testified that he had no knowledge of Konica Minolta's pricing of products in the United States, no knowledge of Konica Minolta's customers, and no knowledge of whether Konica Minolta bundled any MGI product with other products and services.  Dkt. 223-26 at 167:23-168:6, 169:1-13, 171:4-21, 172:20-24, 173:3-11, 217:2-7, 217:17-20.

Therefore, any testimony MGI were to offer on this issue would be speculative and lack any probative value, and it would thus be irrelevant.  *See* Fed. R. Evid. 401, 402.  More importantly, any testimony professing to have newfound knowledge of these topics would be prejudicial under Fed. R. Evid. 403 and fundamentally unfair to Duplo USA, who has relied upon this sworn testimony in building its case and defenses, including testimony MGI may seek to introduce through third-party witnesses, such as Kevin Abergel, who was never designated to speak to any of these topics on behalf of MGI.  To the extent MGI believed Mr. Kevin Abergel would have knowledge of these topics, it never disclosed that in its discovery responses or initial disclosures.  Yet, now, in the eleventh hour before trial, it seeks to not only provide newfound knowledge from a third-party witness, but in a manner that directly contradicts MGI's position on these matters during discovery.

## XV.   MIL NO. 13: COMPARISONS OF BURDEN OF PROOF STANDARDS

The parties should be precluded from characterizing the burden of proof or other legal standards with reference to areas of law other than Title 35 of the U.S. Code (including child custody and mental commitment proceedings).  Fed. R. Evid. 401-403.  "Comparison to areas of law other than patent law by the parties would be irrelevant to whether an applicable burden of proof has been met."  *Pinn, Inc. v. Apple Inc.*, No. 8:19-cv-01805-DOC-JDE, Dkt. 425-1 at 86 (C.D. Cal. Apr. 9, 2021), *recommendation adopted by*, 2021 WL 4777134, at *2 (C.D. Cal. July 14, 2021) (Carter, J.).  There is no reason to depart from the properly articulated burdens of proof in this case, which the Court will provide to the jury.  For example, Duplo USA has the burden to prove invalidity of the '031 and '806 patents by clear and convincing evidence. MGI should not be allowed to analogize this invalidity burden to terminating the parent-child relationship, thereby invoking an emotional context entirely separate from what is at issue here, and which has the direct effect of equating the jury finding a patent invalid to the jury taking a child away from a parent.  *See Pinn*, 2021 WL 4777134, at *2; *see also Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421-TBD-JDL, Dkt. 274 at 2 (E.D. Tex. Feb. 27, 2014) (excluding "[r]eferences to the 'clear and convincing' standard in the Texas Family Code"); Cal. Welfare & Institutions Code § 361(b) (stating that "[n]o dependent child shall be taken from the physical custody of his or her parents … unless the juvenile court finds clear and convincing evidence of... ... a substantial danger to the physical health of the minor …").  It would be highly prejudicial to Duplo USA to confuse and mislead the jury by inviting them to make a comparison with their legally unrelated past experiences or preconceptions.

## XVI.   CONCLUSION

For the foregoing reasons, Duplo USA requests that the Court preclude MGI from presenting evidence, arguments, or testimony as presented in this motion.

Dated: January 12, 2024

FISH & RICHARDSON P.C.

By: */s/ John T. Johnson*

John T. Johnson

Attorneys for Defendant
DUPLO U.S.A. CORPORATION

*Additional counsel*:

Jeffrey C. Mok *(pro hac vice)*
jmok@fr.com
Mohammad Reza Kameli *(pro hac vice)*
kameli@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070 | Fax: (212) 258-2291

Jacqueline Tio *(pro hac vice)*
tio@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street, N.E., 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005 | Fax: (404) 892-5002

Attorneys for Defendant
DUPLO U.S.A. CORPORATION