J. Aron Carnahan (Admitted *Pro Hac Vice*)
HUSCH BLACKWELL LLP
120 S. Riverside Plaza, 22nd Floor
Chicago, IL 60606
(312) 655-1500
(312) 655-1501 (facsimile)
aron.carnahan@huschblackwell.com

Attorney for Plaintiff
*MGI DIGITAL TECHNOLOGY S.A.*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGI DIGITAL TECHNOLOGY S.A., <br><br> Plaintiff, <br><br> v. <br><br> DUPLO U.S.A. CORPORATION, <br><br> Defendant. | Case No. 8:22-cv-00979-DOC-KES <br> Hon. David O. Carter <br><br> **MGI'S RULE 59 MOTION FOR A NEW TRIAL AND RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW AND MEMORANDUM IN SUPPORT THEREOF** <br><br> **Date and Time of Motion:** <br> May 13, 2024 at 8:30 a.m. <br><br> **Name of Judicial Officer Before Whom this Motion is Noticed:** <br> Hon. David O. Carter |

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

# TABLE OF CONTENTS

I.    INTRODUCTION AND MOTION ........................................................................ 1

II.   ARGUMENT ................................................................................................... 1

    A.    The Jury's Verdict Of Noninfringement And invalidity Was Likely A Result of Confusion And Prejudice, Requiring a New Trial..................... 1

        1.    Legal Standard ............................................................................... 1

        2.    MGI Was Substantially Prejudiced When The Court Allowed Duplo to Question Witnesses and Make Arguments Concerning MGI's Alleged Delay in Bringing Suit While Preventing MGI From Explaining the Reason for the Delay. ....................................... 2

        3.    MGI Was Substantially Prejudiced When The Court Allowed Duplo to Question Witnesses and Make Arguments Concerning MGI's Alleged Failure to Disclose KM512 Documents to the Patent Office. ........ 7

        4.    MGI was Substantially Prejudiced When the Court Allowed Duplo to Present Evidence that it Developed Products in Close Association with Duplo Corporation After Duplo Claimed Throughout Discovery that it Lacked Any Such Information and the Court Precluded Duplo Corporation's Witness from Presenting this Evidence. ...................................................................................... 10

        5.    MGI Was Substantially Prejudiced When The Court Allowed Duplo to Argue That It Had Its Own Patents and Therefore Did Not Infringe MGI's Patents, and Refused to Give the Requested Curative Instruction. ..................................................................... 12

        6.    MGI Was Substantially Prejudiced When The Court Allowed Duplo to Argue That Because MGI's Ink Did Not Work in Duplo's Machine, Duplo's Machine Did Not Infringe the Patents, and Refused to Give the Requested Curative Instruction. ........................... 13

        7.    MGI Was Substantially Prejudiced When The Court Allowed Duplo to Present Evidence and Argument Based on an Erroneous Construction of "In Response To."..................................... 14

    B.    MGI Was Entitled To Judgment As A Matter Of Law on Invalidity Because The "KM512 System" Documents Cannot Be Combined For Anticipation And Do Not Qualify As § 102 Prior Art For Obviousness. ................... 16

        1.    Legal Standard. ........................................................................... 16

        2.    Anticipation Cannot Be Based On A "Family" Of Documents. .............. 17

3.    Duplo Failed To Prove That Any Of The Documents On Which Dr.
Reinholtz Relied Qualified As Prior Art.................................................20

III.    CONCLUSION .........................................................................................21

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

# TABLE OF AUTHORITIES

## <u>Cases</u>

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ...................................................................3

*Barber v. City of Chicago*,
  725 F.3d 702 (7th Cir. 2013) .............................................................. 7, 10

*Beckway v. DeShong*,
  No. C07-5072 I, 2012 WL 135574 (N.D. Cal. April 18, 2012) ............................2

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
  80 F.3d 1553 (Fed. Cir. 1996) ..................................................................12

*Browning-Ferris Indus. v. Kelco Disposal, Inc.*,
  492 U.S. 257 (1989) ................................................................................1

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*,
  725 F.3d 1341 (Fed. Cir. 2013) ...............................................................17

*Chuman v. Wright*,
  76 F.3d 292 (9th Cir. 1996) ......................................................................2

*Dang v. Cross*,
  422 F.3d 800 (9th Cir. 2005) ....................................................................2

*E.E.O.C. v. Go Daddy Software, Inc.*,
  581 F.3d 951 (9th Cir. 2009) ...................................................................16

*Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.*,
  762 F.3d 829 (9th Cir. 2014) ...................................................................16

*Hottel Corp. v. Seaman Corp.*,
  833 F.2d 1570 (Fed. Cir. 1987 ...................................................................6

*In re Epstein*,
  32 F.3d 1559 (Fed. Cir. 1994) ....................................................18, 19, 20

*Killian v. Poole*,
  282 F.3d 1204 (9th Cir. 2002) ...................................................................2

*Krechman v. City of Riverside*,
  723 F.3d 1104 (9th Cir. 2013) .................................................................16

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

*Mason v. Tampa G. Mfg. Co.*,
   68 F.3d 488 (Fed. Cir. 1995) ...................................................................... 12

*Moist Cold Refrigerator Co. v. Lou Johnson Co.*,
   249 F.2d 246 (9th Cir. 1957) ........................................................................ 1

*Murphy v. City of Long Beach*,
   914 F.2d 183 (9th Cir. 1990) ........................................................................ 1

*Nat'l Presto Indus., Inc. v. W. Bend Co.*,
   76 F.3d 1185 (Fed. Cir. 1996) .................................................................... 12

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
   545 F.3d 1359 (Fed. Cir. 2008) .................................................................. 18

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
   137 S.Ct. 954 (2017) ..................................................................................... 3

*Shorter v. Baca*,
   No. 19-56182, 2021 WL 4958857 (9th Cir. Oct. 26, 2021) .......................... 1

*Shorter v. Baca*,
   No. CV 1207337-DOC (GJSx), 2019 WL 6620503 *5 (C.D. Cal. Sept. 13, 2019)(Carter, J.) .............................................................................................. 1

*Sonoscan, Inc. v. Sonotek, Inc.*,
   936 F.2d 1261 (Fed. Cir. 1991) .................................................................. 19

*U.S.A. v. Sahakian*,
   No. CR 02-938 (A) VAP, 2007 WL 9676546 (C.D. Cal. Nov. 27, 2007) ........... 19

*United States v. Dukagjini*,
   326 F.3d 45 (2d Cir. 2003) ......................................................................... 19

*United States v. Frederick*,
   78 F.3d 1370 (9th Cir. 1996) ........................................................................ 2

*United States v. Shih*,
   73 F.4th 1077 (9th Cir. 2023) .................................................................... 19

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
   944 F.2d 870 (Fed. Cir. 1991) ............................................................... 6, 12

*Zenith Lab'ys, Inc. v. Bristol-Myers Squibb Co.*,
   19 F.3d 1418 (Fed. Cir. 1994) .................................................................... 14

*Zygo Corp. v. Wyko Corp.*,
   79 F.3d 1563 (Fed. Cir. 1996) ............................................................... 13

## **Rules**

FED. R. CIV. P. 59(a)(1)(A) ........................................................................... 1

FED. R. EVID. 703 ...................................................................................... 19

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

## I.     INTRODUCTION AND MOTION

Plaintiff MGI Digital Technology S.A. ("MGI") hereby moves, pursuant to Fed.R.Civ.P. 59, for a new trial on the grounds of several evidentiary and other errors during the course of the trial, the cumulative effect of which was to render the trial fundamentally unfair. MGI further moves, pursuant to Fed.R.Civ.P. 50(b), for judgment as a matter of law in its favor on the issue of invalidity, because the "KM512 System" Documents cannot be combined for anticipation and do not qualify as Section 102 prior art for obviousness.

## II.    ARGUMENT

### A.     The Jury's Verdict of Noninfringement And invalidity Was Likely A Result of Confusion And Prejudice, Requiring a New Trial.

#### 1.     Legal Standards.

Rule 59 broadly permits a court to grant a new trial after a jury trial "on all or some of the issues," and "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED.R.CIV.P. 59(a)(1)(A). Granting a new trial is left to the sound discretion of the trial court. *See Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989). Historically recognized bases for a new trial include a verdict against the clear weight of the evidence, or error in law that has affected the substantial rights of a party, such as erroneous jury instructions or erroneous evidentiary rulings. *Shorter v. Baca*, No. CV 1207337-DOC (GJSx), 2019 WL 6620503 *5 (C.D. Cal. Sept. 13, 2019)(Carter, J.), citing *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990), *aff'd in part rev'd in part by Shorter v. Baca,* No. 19-56182, 2021 WL 4958857 (9th Cir. Oct. 26, 2021). This Court may set aside the verdict of the jury and grant a new trial "**even though supported by substantial evidence** . . . to prevent, in the sound discretion of the trial judge, a miscarriage of justice." *Murphy*, 914 F.2d at 187, quoting *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256 (9th Cir. 1957) (emphasis added) (district court's grant of a new trial was warranted in the interest of justice).

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

Moreover, a new trial is appropriate under the "cumulative-error doctrine" under which "even if no single error were prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless be so prejudicial as to require reversal.'" *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) ("if ever there was a case for application of cumulative error principles, this is it."). *See also United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) ("[A]lthough no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant.").

"A new trial is only warranted on the basis of an incorrect evidentiary ruling if the ruling substantially prejudiced a party." *U.S. v. 99.66 Acres of Land,* 970 F.2d 651, 658 (9th Cir.1992). *See also* Fed.R.Civ.P. 61 ("[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error  by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order.")

Finally, "[[j]ury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading." *Beckway v. DeShong*, No. C07-5072 I, 2012 WL 135574 at *4 (N.D. Cal. April 18, 2012), quoting *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996). "Prejudicial and thereby reversible error results when, 'looking to the instruction as a whole, the substance of the applicable law was [not] fairly and correctly covered.'" *Id*., quoting *Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005) (alteration in original).

**2.  MGI Was Substantially Prejudiced When The Court Allowed Duplo to Question Witnesses and Make Arguments Concerning MGI's Alleged Delay in Bringing Suit While Preventing MGI From Explaining the Reason for the Delay.**

Prior to trial, Duplo moved for summary judgment on the grounds of equitable estoppel, claiming, among other things, that MGI waited nearly five years

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

to file this case after the parties' cease and desist correspondence ended in June of 2017. Dkt. 236 at 14. MGI concurrently moved for summary judgment of **no** equitable estoppel, because MGI instituted a parallel patent infringement suit in France against Duplo entities in May of 2017, and Victor Abergel told the Duplo defendants (including Duplo Corporation) that MGI intended to sue Duplo USA in the United States at the conclusion of the French litigation. Dkt. 237 at 18.

On January 5, 2024, this Court granted MGI's motion for summary judgment of no equitable estoppel, wherein this Court found "persuasive" two Federal Circuit decisions that "a patentee's other litigation may excuse a delay in bringing suit if the presently accused infringer had adequate notice of the other litigation and had been informed of the patentee's intention to later bring suit against the presently accused infringer." Dkt. 317 at 45. This Court concluded that based on the circumstances of this case, and "considering that the doctrine of equitable estoppel is 'addressed to the sound discretion of the trial court,' **Defendant's assertion of equitable estoppel here is simply inconsistent with principles of equity and basic fairness**." *Id*. at 47, citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992), *abrogated on other grounds by SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S.Ct. 954 (2017) (emphasis added).

Thereafter, MGI filed motion *in limine* no. 1, seeking an order that Duplo shall not introduce evidence, testimony, or argument on issues solely for the Court, including unclean hands, which entailed MGI's alleged delay in bringing this suit. Dkt. 328. This Court granted MGI's motion in connection with "the fact that MGI delayed in filing the present lawsuit," because "[a]ny probative value of such evidence would be substantially outweighed by the dangers of unfair prejudice and waste of time," and "the timing of Plaintiff filing suit do[es] not appear to bear upon any issue that the jury will be asked to decide and would only cause unnecessary confusion." Dkt. 354 pp. 3, 5.

MGI also filed motion *in limine* no. 8 to allow MGI to introduce Victor Abergel's statement to Duplo Corporation that MGI was going to sue Duplo USA

for patent infringement after the French litigation, and Duplo Corporation's statements to the French Court concerning how the DDC-810 functioned. Dkt 328 pp. 20-22. Simultaneously, Duplo filed its motion *in limine* no. 1 that MGI shall not introduce evidence, testimony, or argument regarding MGI's litigation in France. Dkt. 326 pp. 1-7. The Court granted Duplo's motion, with the exception of allowing the French bailiff's report, so long as the report was redacted to remove any references to the French Litigation. Dkt. 354 at 20.

Despite losing its motion for summary judgment on the issue of equitable estoppel, Duplo suggested throughout the trial that MGI waited too long to bring this suit. For instance, in Duplo's Opening Statement, Mr. Johnson stated: "Remember, Duplo's last letter to MGI was in June of 2017. MGI sued Duplo U.S.A. in May of 2022." Tr. Day 1, Vol 2 at 44:16-17. And again, in Duplo's closing argument, Duplo emphasized the alleged delay in filing suit: "Duplo sent it's [sic] last letter to MGI on June 2, 2017. This lawsuit wasn't filed—this lawsuit was filed in May of 2022." Tr. Day 6, Vol. 1 at 92: 20-22. Duplo also referenced this alleged delay when questioning witnesses at trial. For instance, when asking Michael Abergel about the cease and desist correspondence:

Q So they provided more documentation, right?

A Yes.

Q And that's the end of the correspondence, true?

A You know that there was more than that, but –

Q That's the end --

A Of this correspondence, yes.

Tr. Day 3, Vol. 1 at 101:4-9.[1] In fact, Mr. Abergel was prohibited from explaining that it was not "the end" of the matter between the parties since MGI had sued

_____

[1] Copies of the trial transcript pages referenced in this Brief are submitted herewith as Exhibit A.

Duplo in France in a related patent infringement matter, because this Court had absolutely forbidden the parties to mention the French litigation during the trial. In effect, Mr. Abergel was placed in the untenable position where he had to withhold material facts from the jury in direct response to Duplo's direct questions. Thereafter, prior to redirect, MGI's Counsel sought permission to introduce the fact that MGI had sued Duplo in France during the time the parties exchanged cease and desist correspondence because Duplo had "opened the door" allowing such evidence: "Your Honor, with regard to cease and desist correspondence, we maintain a door has been opened." Tr. Day 3, Vol. 1 at 109:21-23. The Court stated that it would "take that out of the presence of the jury." *Id*. at 24-25. MGI's request was denied the following day:

> Motion In-Limine No. 1 . . . my ruling is as follows: On behalf of plaintiff, **you have argued that the defendant opened the door to discussion of the French litigation**, or at least to stating the fact that plaintiff filed suit against a Duplo entity in France **because the defense elicited testimony regarding the delay between the cease and desist correspondence in 2017 and your filing of the present suit in 2022**. Although this Court considered the French litigation when granting plaintiff's motion for summary judgment of no equitable estoppel finding that plaintiff was not estopped from filing suit against Duplo USA five years later because plaintiff was litigating in France, the passage of time is simply self-evident from the dates of the correspondence as I said yesterday.
>
> * * * But defendant should not argue to the jury that the passage of time is a bar to recovery because the Court has already found otherwise. None the less, **plaintiff cannot use that ruling as a complete shield to this passage of time**. Plaintiff has chosen to litigate in France because it's a French entity while the alleged infringement in the United States was ongoing. **Plaintiff has not shown to this Court**

**any reason it could not have filed suit in the United States while also litigating in France. So plaintiff's request to revisit the Court's exclusion of the French litigation is denied**.

Tr. Day 4, Vol. 1 at 56:15-57:20 (emphasis added). By permitting Duplo to introduce evidence and argument about MGI's purported delay in bringing this suit, while at the same time preventing MGI from explaining that this delay was the result of concurrent litigation in France, MGI was substantially prejudiced, because this evidence and argument permitted the jury to decide in favor of Duplo on an issue and for a reason not properly before the jury, i.e., because MGI waited too long to file suit. The Court incongruently held that the passage of time was not a bar to recovery, yet penalized MGI for failing to demonstrate "any reason why it could not have filed suit in the United States while also litigating in France." Tr. Day 4, Vol. 1 at 56:15-57:24. MGI had no such obligation under the case law, and the Court's ruling in this regard was incorrect as a matter of law. Indeed, in the two Federal Circuit cases that this Court found "persuasive" (*Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570 (Fed. Cir. 1987) and *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991)), there was no requirement that the plaintiff demonstrate why it could not have filed the suit at bar while previous litigation was ongoing in order in avoid the equitable estoppel defense, and the Court's imposition of this new requirement during trial was prejudicial error.

As the Court stated in denying Duplo's motion for summary judgment, Defendant's assertion of equitable estoppel here is "simply inconsistent with principles of equity and basic fairness." Dkt. 317 at 47. Permitting Duplo to introduce and argue evidence of delay while preventing MGI from explaining this delay resulted in unfair prejudice to MGI and necessitates a new trial. *See Murphy*, 914 F.2d at 187 (trial judge did not abuse his discretion in granting Murphy a new

trial "given the judge's firm conviction that the impact of these errors resulted in a miscarriage of justice."). *See also Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013) (reversing district court's denial of a new trial because the lower court's evidentiary rulings at trial that were contrary to the court's pretrial rulings barring the evidence "because the risk of unfair prejudice substantially outweighed the probative value of the conviction for impeaching [plaintiff's] credibility" and permitted the jury to draw improper inferences).

> **3.      MGI Was Substantially Prejudiced When The Court Allowed Duplo to Question Witnesses and Make Arguments Concerning MGI's Alleged Failure to Disclose KM512 Documents to the Patent Office.**

On September 5, 2023, Duplo moved for leave to amend its Answer in order to include an inequitable conduct defense, based on the allegation that MGI improperly withheld information about Konica Minolta KM512 inkjet technology from the patent office during prosecution of the '031 and '806 Patents. Dkt. 151-1 pp. 1-2. This Court denied the motion to amend because Duplo did not show "good cause" under Rule 16(b)(4) to add a defense eight months after the Court's deadline to amend pleadings and only four months before trial, and because the proposed amendment did not adequately plead the requisite specific intent under Rule 15(a)(2). Dkt. 179 pp. 8-9.

Thereafter, MGI's motion *in limine* no. 1 sought an order that Duplo shall not introduce evidence, testimony, or argument on issues solely for the Court, including unclean hands, which entailed MGI's alleged misconduct during the prosecution of patents. Dkt. 328 pp. 2-3. The motion was denied in part "so as to allow evidence regarding patent prosecution, Mr. Regis Thienard, and Konica Minolta." Dkt. 354 p. 17. During the trial, Duplo made arguments and asked multiple witness questions improperly suggesting that MGI breached a duty to disclose the KM512 technology to the Patent Office. For example, Duplo's Opening Statement was replete with accusations of MGI's failure to disclose KM512 documents to the Patent Office:

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

The patent office is a government agency. They've got qualified patent examiners. When they get a new application and examine whether it's new, they got to look at -- they got to search for information, as we heard, and they also have to receive information from the applicant. **Here, the patent office didn't have all of that information. . . . MGI didn't tell the patent office about KM512**.. . .  And you will see many documents from **MGI's own files about the KM512 not provided to the patented office.** But counselor earlier showed you what they call "file histories," handed those up, said they were, what, 300 pages long or something. **Hundreds and hundreds of pages of KM512 documents were not included in that information**.

Tr. Day 1, Vol. 2 at 57:22-58:20 (emphasis added). *See also id.* at 58:24-59:2 ("And again, it's important to remember that **the patent office never got all of this information that MGI had gotten from Konica Minolta** years before it filed for its products.") (emphasis added).

Moreover, Duplo repeatedly questioned MGI's witnesses about this alleged failure to disclose. *See* Tr. Day 2, Vol. 1 at 62:18-20 ("The documents that we've discussed over the past 20 or so minutes, the Konica Minolta KM512 documents, the Patent Office did not have those documents?"); *Id*. at 63:3-5 ("The Patent Office did not have the documents that we just went over and admitted into evidence?"); *Id*. at 64:8-10 ("The Patent Office did not have these documents that we just spent about 20 to 30 minutes discussing, isn't that true?"). This was followed by counsel reading the declaration concerning the duty to disclose submitted to the Patent Office by Mr. Edmond Abergel:

> Q    And if you look at the bottom of this document, it states that you are "aware of the duty to disclose to the Office all information known to the person to be material to patentability as defined in 37 C.F.R. Section 156." Do you see that?
>
> A    Yes.

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

1    Q    And you signed this statement?

2    A    Yes.  I signed and I confirmed.

3    Q    Yes, and you declared that you were aware of your duty to provide

4    information to the Patent Office?

5    A    Absolutely.

6    Tr. Day 2, Vol. 1 at 65:4-14. Counsel continued:

7    Q        Mr. Abergel, you understand that there's a form that you fill out

8    when filing for a patent in the United States in which the applicant has to

9    identify all of the prior art that it believes is relevant? You're aware of that,

10    right?

11    A    Yes.

12    *Id*. at 66:1-11. Duplo posed the same questions to Mr. Michael Abergel. *See* Tr. Day

13    3, Vol. 1 at 87:7-11 ("Q We see none of those references cited there are the KM512

14    documents that were shown to your brother yesterday? A Okay. Q True? A True.");

15    *id*. at 87:23-88:2 ("Q None of those patent documents are the KM512 documents

16    that were cited and described and brought into evidence with your brother yesterday,

17    right? A Yes."); *id*. at 88:6-15 (Q And just for the last point I have to make here it

18    that—if we blow up 'Foreign Patent Documents,' do you see that? A Yes. Q None

19    of those are the KM512 documents, right?"); and *id.* at 88:22-89:1. Duplo made the

20    same arguments during closing. Tr. Day 6, Vol. 1 at 109:1-4.

21        During the trial, on February 11, 2024, MGI filed proposed curative

22    instructions in order to avoid unfair prejudice to MGI based on, among other things,

23    comments and questions from counsel for Duplo suggesting that MGI violated its

24    obligation to the PTO by failing to provide the KM512 materials to the U.S. Patent

25    Office when MGI was obtaining its patents. Dkt. 367 p. 1. The proposed instruction

26    stated, in part: "There is no issue in this case regarding whether MGI or Mr.

27    Edmond Abergel acted properly or improperly in providing information to the US

28    Patent Office in connection with the process of applying for the '031 Patent or '806

Patent. In considering the validity of the '031 Patent and '806 Patent, you must

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

1    assume that MGI and Mr. Edmond Abergel complied with any duty to inform the
2    US Patent Office of information." Dkt. 367-1 p. 2. The Court, however, refused to
3    give this curative instruction.

4         The Court's allowance of questions and argument by Duplo highlighting Mr.
5    Abergel's duty to disclose material information to the Patent Office, along with
6    evidence that MGI failed to disclose KM512 documents to the Patent Examiner, and
7    its refusal to give a curative instruction, caused substantial prejudice to MGI,
8    because this provided "powerful ammunition" to support a jury argument that MGI
9    should not recover from Duplo because MGI should have, but did not disclose the
10   KM512 technology to the Patent Examiner. *See Barber*, 725 F.3d at 717. This,
11   combined with the other errors discussed herein, requires a new trial.

12        **4.    MGI was Substantially Prejudiced When the Court Allowed**
13        **Duplo to Present Evidence that it Developed Products in**
14        **Close Association with Duplo Corporation After Duplo**
15        **Claimed Throughout Discovery that it Lacked Any Such**
16        **Information and the Court Precluded Duplo Corporation's**
17        **Witness from Presenting this Evidence.**

18        During discovery, Duplo refused to produce to MGI any information about
19   the development or operation of the accused printers, claiming lack of control over
20   the information that was in the possession of non-party Duplo Corporation. MGI
21   filed a motion to compel this discovery that was denied by the Special Master. Dkt.
22   88. MGI appealed the Special Master's order, and the Court held a hearing on the
23   appeal, ordered additional discovery, received supplemental briefing, and affirmed
24   the Special Master's order on the grounds that Duplo does not have control over the
25   documents that MGI sought. Dkt. 136 at 7-9. Meanwhile, in July of 2023, Duplo
26   identified Duplo Corporation employee Shuhei Yamamoto as likely to have
27   discoverable information regarding "[d]esign, development, conception of the DDC-
28   810 and DDC-8000 printer products" and further indicated that it may call Mr.
     Yamamoto as a trial witness. *See* Dkt. 155-1 p. 3. MGI objected to the Special

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

Master that Duplo should not be able to use its relationship with Duplo Corporation as a sword by calling Yamamoto to testify about product development at trial while also using the relationship as a shield by refusing to produce evidence or documents from Yamamoto due to its alleged lack of control over Duplo Corporation. Special Master Keyzer declined to preclude Yamamoto from testifying at trial, but "to promote the interests of justice" he issued a "request" that "by October 6, 2023, non-parties Mr. Shuhei Yamamoto and Duplo Corporation produce all documents in their possession, custody or control that are reasonably related to the topics for which Defendant has listed Mr. Yamamoto as likely to have discoverable information [i.e. regarding Design, development, conception of the DDC-810 and DDC-8000 printer products] . . . ." Dkt. 155-1 p. 6.

Because Duplo never produced documents in response to the Special Master's request, MGI filed its motion *in limine* no. 7 that Yamamoto should be excluded from trial, which motion was granted unless Duplo produced the documents requested by the Special Master prior to trial. Dkt. 354 p. 9. The Court reasoned:

> The lack of production of documents by Duplo Corporation, despite the Special Masters explicit request (based on Duplo Corporation providing Mr. Yamamoto as a witness to assist Defendant in its defense of this case), deprives Plaintiff of a fair opportunity to cross-examine Mr. Yamamoto at trial. This implicates the Court's concern at the June 26, 2023 hearing regarding "the sword and the shield" . . . because non-party Duplo Corporation is attempting to provide a witness to assist its related company, Defendant, while simultaneously declining to produce any underlying documents.

Dkt. 354 p. 9. Nevertheless, at trial, Duplo questioned its employee Si Nguyen at length about the "development" of the DDC-810 printer, and how it allegedly "evolved" from an earlier DIJ-200 inkjet printer. Tr. Day 3, Vol. 1 pp. 4-9. Duplo employee Mr. Salinas further testified that the DIJ-200 was a "predecessor" to the DDC-810. Tr. Day 4, Vol. 1 pp. 71-72. Through this line of questioning, Duplo was

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

able to do an end run around the Court's order precluding Mr. Yamamoto from testifying about the alleged "development" of the DDC-810 printer, by eliciting testimony that the DDC-810 "evolved" from the DIJ-200 printer, which introduced a theory and version of the facts never before presented by Duplo, and for which no documents were produced. This evidence caused substantial prejudice to MGI because it permitted the jury to conclude that the DDC-810 was just another iteration of old Duplo technology rather than an infringing device of MGI's innovative technology.

> ### 5. MGI Was Substantially Prejudiced When The Court Allowed Duplo to Argue That It Had Its Own Patents and Therefore Did Not Infringe MGI's Patents, and Refused to Give the Requested Curative Instruction.

Another legally insufficient defense argued by Duplo which surely confused the jury was its contention that it does not infringe because it has its own patents. Such evidence is entirely irrelevant to the issue of infringement. *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("That BTG patented its unique purification method is irrelevant."); *Mason v. Tampa G. Mfg. Co.*, 68 F.3d 488 (Fed. Cir. 1995) ("On appeal, Mason argues that the district court erred by relying on Club Pro's patent to preclude a finding of infringement.… We agree with Mason that the district court's opinion misstated the law."); *Vaupel*, 944 F.2d at 879 n. 4 (Fed. Cir. 1991) ("[I]t is well-established that the existence of one's own patent does not constitute a defense to infringement of someone else's patent.").

Duplo has argued that having its own patents might be relevant to the permissible scope of equivalents, but in the case Duplo cites the asserted patent had been cited as prior art, which was the basis for arguing that issuance of the other patent ***over*** that prior art was potentially relevant to assessing the substantiality of the differences: the accused infringer particularly stressed "that the patent examiner cited Presto's '286 patent as prior art, when granting a patent to West Bend." *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1191 (Fed. Cir. 1996). It was only

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

that citation by the examiner, and the examiner's consideration of that references, that made it potentially relevant to assessing the substantiality of the differences. In the absence of such evaluation, the mere "grant of a separate patent on the accused device does not automatically avoid infringement, either literal or by equivalency." *Id. Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563 (Fed. Cir. 1996) is similarly distinguishable. *Id.* at 1570 ("Wyko's patent, against which the '473 patent was cited and considered as prior art, is thus presumed nonobvious in view of the '473 patent until proven otherwise.").

Here, Duplo considered MGI's patents so remote from what it claimed in its own patents that it ***did not even cite them as prior art*** during prosecution, which makes them irrelevant to the issue of the permissible scope of equivalents. Duplo certainly knew of MGI's patents, and if they were relevant Duplo had a duty to disclose them. Here, Duplo's patents concern a completely different feature in the technology, and are simply not relevant to the doctrine of equivalents and the insubstantiality of differences between the asserted patents and the accused device. In short, Duplo's patents are irrelevant to any issue of infringement and allowing them into evidence, over MGI's objection, in combination with the other errors discussed herein, was substantially prejudicial and requires a new trial.

Allowing this evidence caused substantial prejudice to MGI because it permitted the jury to erroneously conclude that there was no infringement because Duplo had its own patents. MGI asked the Court for a curative instruction in this regard, which stated, in part, that "[t]he existence of one's patent does not constitute a defense to infringement of someone else's patent. . . . Therefore, you may not consider the fact that Duplo Corporation received any patents relating to the Accused Products as evidence of non-infringement by Defendant." Dkt. 367-1 p. 1. This request was denied.

**6.    MGI Was Substantially Prejudiced When The Court Allowed Duplo to Argue That Because MGI's Ink Did Not Work in Duplo's Machine, Duplo's Machine Did Not**

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

### Infringe the Patents and Refused to Give the Requested Curative Instruction.

Another legally irrelevant defense Duplo was allowed to argue was its assertion that MGI inks did not work in the Duplo machine. None of the claims tried in this case contained any limitation restricting the ink to any particular viscosity. More generally, it is legal error to assess infringement based on a comparison to the patentee's commercial embodiment. *E.g.*, *Zenith Lab'ys, Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("As we have repeatedly said, it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent."). The admission of this evidence was error, and was not harmless, because this permitted the jury to improperly conclude that the accused printers did not infringe because MGI's ink did not work in Duplo's machine. MGI requested a curative instruction to the effect that evidence comparing the Accused Products to MGI's products "is not evidence of infringement or non-infringement, literally or under the doctrine of equivalents" (Dkt. 367-1 p.3), but this request was denied.

### 7. MGI Was Substantially Prejudiced When The Court Allowed Duplo to Present Evidence and Argument Based on an Erroneous Construction of "In Response To."

Duplo also argued non-infringement based on a legally erroneous claim construction that had already been rejected by the Special Master's Report & Recommendation on Claim Construction. (Doc. 861.) At the outset, Duplo was well aware that the parties were not permitted to argue claim constructions different than the Court adopted, having moved *in limine* to prevent MGI from making such arguments. *See* Dkt. No. 354 at 22:15-17. Nevertheless, Duplo's expert Dr. Reinholtz testified at trial that "in response to" meant "if something has to be detected or measured, and then a change has to occur." (Tr. Day 4, Vol. 1 133:18–

133:19.)[2] This is the same claim construction argument Duplo made in the Markman proceedings in which Duplo contended that "in response to" meant "occurs during the operation." (Doc. 861 at 81–86.) However, the Special Master **specifically rejected** Duplo's proposed claim construction that "in response to" meant "occurs during the operation," stating: "The Special Master therefore hereby expressly rejects Defendant's proposed Construction…".  In rejecting Duplo's contention, the Special Master found that that phrase has its plain meaning.  (Doc. 86-1 at 86:13–14).)

The Markman proceedings established a definition of "in response to" that is at complete odds with Dr. Reinholtz's contentions at trial. Specifically, "in response to" was construed in Markman to include parameters "in a configuration file" and "specified in advance of the recited method being performed" could satisfy this limitation. (Doc. 86-1 at 86:1–12.) The unrebutted testimony from MGI's expert witness Dr. Ma at trial was that in the field of printing technology, "in response to" meant that the system was configured based on those parameters, even if the waveforms were preprogrammed.  Duplo was nevertheless allowed to present its non-infringement argument based on a legally incorrect claim construction that the Court had already rejected. Because the Court had rejected this language as not being the plain meaning, that rejection was not included in the Court's jury instructions regarding the claim construction. However, allowing defendants to argue non-infringement based on a rejected and legally erroneous claim construction

---

[2] Dr. Reinholtz also testified that that "in response to" "is a term we use in the control system art" (Tr. Day 4, Vol. 1 at 133:17–133:18; *see* Tr. Day 4, Vol. 1 at 149:21–150:6), but it was undisputed that the relevant field of art is ***not*** control systems. Dr. Reinholtz himself identified the relevant field as ink jet printing, not control systems.

was legal error, substantially prejudicial to Defendant, and a new trial is appropriate on these facts.

**B.      MGI Was Entitled To Judgment As A Matter Of Law on Invalidity Because The "KM512 System" Documents Cannot Be Combined For Anticipation And Do Not Qualify  As § 102 Prior Art For Obviousness.**

### 1.  Legal Standard

Judgment as a matter of law is proper if "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quotation marks omitted). In evaluating a motion for judgment as a matter of law, the Court must view all the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). The Court may not, however, make credibility determinations, weigh the evidence, or "substitute its view of the evidence for that of the jury." *Krechman v. City of Riverside*, 723 F.3d 1104, 1110 (9th Cir. 2013) (quotation marks omitted).

MGI was entitled to judgment as a matter of law on Duplo's invalidity defenses as presented at trial.[3] As an initial matter, anticipation cannot be based on a "family" of references, but instead must be based on a single reference. And here, the "KM 512 System of documents" do not qualify as prior art under § 102(e) because they are not tied to conception by any other natural person identified as

---

[3] The Court indicated that it "bookmarked" MGI's motion for judgment as a matter of law under Rule 50(a) until after the jury returned its verdict, so MGI may properly raise Rule 50(b) objections in this brief.  *See* Tr. Day 4, Vol. 1 p. 55:14-16; Tr. Day 5 p. 21:13-16; *Id*. p. 23:8-9. *See also* Tr. Day 6 pp. 6:12-15, 7:1-10.

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

required by law, were not even asserted to be prior art under any other provision of pre-AIA § 102, and therefore cannot be combined for obviousness. MGI raised these issues before the case was submitted to the jury.

At trial, Duplo's expert witness Dr. Reinholtz offered an invalidity theory by impermissibly combining bits and pieces from multiple different documents (including Exs. 738, 740, 742, 749, 902, 1047, 1048, 1051, and 1637) when anticipation requires a single reference. It was legal error to instruct the jury that numerous documents were one single reference for purposes of anticipation. Moreover, the evidence at trial failed to establish that *any* of those documents actually qualify as "prior art" at all under any provision of 35 U.S.C. § 102, whether § 102(a), (b), or (e).[4]

## 2.    Anticipation Cannot Be Based On A "Family" Of Documents.

It is black letter law that anticipation requires a patent challenger to prove by clear and convincing evidence that each and every element in the patent claim is disclosed within the four corners of *a single document* cited as a reference. *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1351 (Fed. Cir. 2013) ("Anticipation requires clear and convincing proof that **a single prior** art reference 'not only disclose[s] all of the elements of the claim within the four

---

[4] MGI timely raised these issues before the case was submitted to the jury. The deficiencies in Duplo's legal theories are set forth in the footnotes to the proposed jury instructions. Dkt. 353-2. MGI also objected to the use of these documents as themselves prior art, including in a motion *in limine* raising that issue. At trial, however, instead of proving up an on sale bar, Duplo simply asked witnesses whether these documents were dated before the patent filing date, but the date alone is *not* sufficient to show that these documents themselves were prior art, and is contrary to the Court's pre-trial ruling.

corners of the document, but ... also disclose[s] those elements arranged as in the claim.'")(emphasis added)(quoting *Net MoneyIN, Inc. v. VeriSign, Inc.,* 545 F.3d 1359, 1369 (Fed. Cir. 2008).

Duplo argued that "Multiple documents can be used to describe a single prior art system, and therefore such prior art is already accounted for in Duplo USA's identification of the KM512 system in its top 20 references." (Doc. 353-2 at Page ID #:27770, n.57.) But this principle applies only where ***an item proven to be on sale*** was the invalidating prior art and the documents are used to show what that on sale prior art article disclosed the actual item (as the case cited by Duplo explicitly states). *In re Epstein*, 32 F.3d 1559, 1563 (Fed. Cir. 1994) ("The other publications ***are not prior art themselves***; rather, they allegedly evidence prior art products."). Here, Duplo impermissibly argued that the various confidential KM512 documents could be combined as one invalidating reference, not that the KM512 printhead itself was the invalidating prior art. Of course, the KM512 printhead does not itself disclose any waveforms or how to control the waveforms (as discussed below).

MGI properly objected to the admission of the KM512 documents as hearsay. (E.g., Tr. Day 2, Vol 1 at 55:17–56:2.) The Court overruled the objections, stating that "that means your company is reading and relying upon these documents if they're in your possession, or they're business records coming in if they're a document." (*Id.*, at 57:6–57:9, 84:15–85:2.) MGI also objected to testimony from these documents as hearsay, which the Court overruled, stating that an "expert can testify from hearsay." (Tr. Day 4, Vol 2 at 96:5–11.) The Federal Circuit in *Epstein*, however, recognized that such statements in a document allegedly describing a prior art product are hearsay. *Epstein*, 32 F.3d at 1565 ("We agree with appellant that the statements of 'release' and 'first installation' in the abstracts are, generally speaking, hearsay statements. The statements are out-of-court written assertions offered by the PTO to prove the truth of the matter asserted…."). Experts may rely on otherwise inadmissible evidence (such as hearsay) ***only*** upon a foundational showing that "experts in the particular field would reasonably rely on those kinds of facts or data

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

in forming an opinion on the subject," and such materials may be disclosed to the jury "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." FED. R. EVID. 703; *U.S.A. v. Sahakian*, No. CR 02-938 (A) VAP, 2007 WL 9676546, at *3 (C.D. Cal. Nov. 27, 2007) ("Moreover, expert witnesses are allowed to rely on certain types of hearsay in forming their opinions."); *United States v. Dukagjini*, 326 F.3d 45, 58 (2d Cir. 2003) ("[W]e recognized that, under certain circumstances, an expert witness may rely on hearsay, but we did not wholly exempt expert testimony from the hearsay rule."). An expert may rely on hearsay to form an opinion, but may not assert that evidence as a general proof of the truth of the underlying matter. *Id*. at 58 ("[W]e hold that an expert witness may rely on hearsay evidence while reliably applying expertise to that hearsay evidence, but may not rely on hearsay for any other aspect of his testimony."). An expert may not simply relay hearsay to the jury, nor may he serve as a conduit for introducing hearsay. *United States v. Shih*, 73 F.4th 1077, 1098 (9th Cir. 2023), *cert. denied,* No. 23-693, 2024 WL 674836 (U.S. Feb. 20, 2024). Here Duplo did not even ask the witness the questions necessary to lay a foundation that this is material of the type relied upon by experts in the field, and instead allowed the witness simply to repeat hearsay from the documents which are not themselves prior art.

Similarly, in *Sonoscan, Inc. v. Sonotek, Inc*., 936 F.2d 1261, 1263 (Fed. Cir. 1991), the alleged prior art was a particular product proven to be offered for sale by a price quotation to IBM more than a year before the critical date. *Id.* Although the quotation itself did not show that the product offered included all the elements of the patented invention, the Court held that other evidence could be used to show that the offered product included those elements. However, such evidence is only relevant if it shows that the cited features were ***publicly*** disclosed by the offer for sale. *Epstein*, 32 F.3d at 1566 ("First, it must be inferred that, as of a time before the critical date, the software products, and their various features cited by the PTO, were not initially released or installed under a veil of secrecy. In other words, it must be inferred that

the products and their cited features either were in 'public' use, or were on sale for a purpose other than a *bona fide* experimental one."). Here, however, Dr. Reinholtz admitted that even if the KM512 printhead were offered for sale, that would ***not*** disclose the information in these other documents. (Tr. Day 4, Vol. 2 at 93:8–17.)

### 3. Duplo Failed To Prove That Any Of The Documents On Which Dr. Reinholtz Relied Qualified As Prior Art.

As noted above, the "KM512 system of documents" are not ***themselves*** prior art. *In re Epstein*, 32 F.3d at 1563 ("The other publications ***are not prior art themselves***; rather, they allegedly evidence prior art products."). Yet Dr. Reinholtz in his obviousness analysis cherry from these various documents picked bits and pieces of information which he admitted were ***not*** disclosed by any sale of a printhead, then used combinations of those documents ***that are not themselves prior art*** for his obviousness theory. This added a dozen references which Duplo had not disclosed individually as being prior art themselves, despite the Court having ***granted*** MGI's motion to limit Duplo to the invalidity theories disclosed in its contentions.

Duplo not only failed to prove that the KM512 printhead, or the documents allegedly describing it, were § 102(b) prior art, it also failed to provide any evidence, let alone clear and convincing evidence, that these unpublished documents would qualify as a printed publication, so they do not qualify as prior art under § 102(a). Duplo also failed to provide any evidence, let alone clear and convincing evidence, of any prior conception by a human being (whom it was required by 35 U.S.C. § 282 to identify not later thirty days before trial) and communication of that conception to Edmond Abergel, such that these documents also have not been proven to qualify as prior art under § 102(e). Indeed, the jury here found that Duplo ***failed*** to prove improper inventorship. (Tr. Day 6, Vol. 2 at 11:8–15.) These documents are not printed publications under § 102(a), and not disclosed in any products proven to be "on sale" under § 102(b), and do not reflect any prior conception under § 102(e).

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

Duplo has therefore failed to provide clear and convincing evidence that these documents, including Exs. 738, 740, 742, 749, 902, 1047, 1048, 1051, and 1637, are prior art *at all*. They are therefore not only unavailable for anticipation, they are not available for use in a combination to show obviousness under § 103. These documents were the *only* basis for Dr. Reinholtz's opinion as to invalidity for obviousness or anticipation. There is therefore no evidence, let alone clear and convincing evidence, on which the jury could properly base a verdict of invalidity. MGI is entitled to judgment as a matter of law on this issue.

## III.    CONCLUSION

For the reasons stated herein, MGI respectfully requests that its Motion for Judgment as a Matter of Law and/or New Trial be granted.

Dated:  March 25, 2024                **HUSCH BLACKWELL LLP**


By:    */s/ J. Aron Carnahan*


Mhare Mouradian (SBN 233813)
mhare.mouradian@huschblackwell.com
HUSCH BLACKWELL LLP
355 South Grand Avenue, Suite 2850
Los Angeles CA 90071
Tel: (916)414-2611
Fax (916)414-2612


J. Aron Carnahan (Admitted *Pro Hac Vice*)
Aron.Carnahan@huschblackwell.com
Segrest, Philip (Admitted *Pro Hac Vice*)
Philip.Segrest@huschblackwell.com
HUSCH BLACKWELL LLP
120 S. Riverside Plaza, Suite 2200
Chicago, IL 60606
Telephone: (312) 526-1612

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, STE. 2850
LOS ANGELES, CA 90071

## <u>Certificate of Compliance</u>

The undersigned, counsel of record for plaintiff MGI Digital Technology, S.A., certifies that this brief contains less than 7,000 words, which

___x___          complies with the word limit of L.R. 11-6.1

___ ___          complies with the word limit set by court order dated October 28, 2022.

*/s/ J. Aron Carnahan* _____
J. Aron Carnahan
Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 25, 2024, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

*/s/ J. Aron Carnahan* _____
J. Aron Carnahan
Counsel for Plaintiff